**Ray SMITH,
Plaintiff-Respondent-Appellant,**

v.

**Larry P. COURTER, Arthur B. Smith, and John W. Walker, d/b/a Lockwood Radiological Group, Defendants-Appellants-Respondents.**

Nos. KCD 29107, KCD 29115.

Missouri Court of Appeals,
Kansas City District.

May 1, 1978.

Motion for Rehearing and/or Transfer
Denied June 12, 1978.

Application to Transfer Denied
Jan. 29, 1979.

See also, Mo., 531 S.W.2d 743.

Dean F. Arnold, Donald E. Raymond, Kansas City, for appellants Arthur B. Smith and John W. Walker.

Lantz Welch, Welch & Austin, Kansas City, for respondent Ray Smith.

Before PRITCHARD, P. J., SWOFFORD, C. J., and DIXON, J.

DIXON, Judge.

This is the second appeal arising from a claim for damages for malpractice by a medical partnership. Upon the first appeal, a judgment for $105,000 actual damages was reversed because plaintiff's argument to the jury was held to inject the issue of punitive damages. *Smith v. Courter*, 531 S.W.2d 743 (Mo. banc 1976).

In the instant appeal, the cause was submitted to the jury for findings on actual and punitive damages. The jury awarded actual damages of $50,000 and punitive damages of $150,000. The trial court ordered a remittitur of $50,000 from the award of punitive damages which the plaintiff accepted under protest. Plaintiff filed a notice of appeal (KCD29115), but has not briefed the appeal, and it is abandoned.

The defendants' appeal, in eight separate points, raises issues of submissibility, instructional error, the submission of punitive damages, as well as questioning the trial court's amendment of the verdict and judgment to name the partnership properly.

The posture of the present case, from an evidentiary standpoint, differs from the prior trial. Because submissibility is argued, a statement of facts must be made in this case rather than referring to the facts as developed in the original trial. This is particularly true since in the instant case the plaintiff dismissed as to defendant Courter, and the trial judge, at the instance of the remaining defendants, withdrew from the consideration of the jury the deposition evidence of Dr. Courter.

In accordance with the well-settled rule that on the issue of submissibility, this court considers the evidence in the light most favorable to the plaintiff, together with all reasonable inferences, and disre-

gards evidence and inferences adverse to the plaintiff (*Steele v. Woods*, 327 S.W.2d 187 (Mo.1959)), the following factual statement is supported by the record.

In 1967, the plaintiff consulted his family physician complaining of soreness in the rib area. The doctor noticed tenderness at about the level of the 10th rib and decided X-rays were necessary. The plaintiff was referred to the Lockwood Radiological Group which was a general partnership consisting of the defendants, Dr. Smith and Dr. Walker. Dr. Courter, then a resident, was an employee of the partnership, and his agency for the partnership is not an issue in this case. Pursuant to that reference, the plaintiff was X-rayed; and Dr. Courter dictated a report of his findings. The report stated that there was a lytic lesion in the anterior end of the 11th rib and indicated that the lesion was probably a metastatic disease suggestive of a malignant tumor which had spread from its original site to a new location. The report recommended a biopsy. Dr. Smith signed this report dictated by Dr. Courter, but there is no evidence that he himself reviewed the X-rays. Not all X-rays were reviewed when they were interpreted by Dr. Courter.

Upon receipt of the report, the family physician, upon the basis of the plaintiff's complaints and the possibility of the cancerous lesion, decided that the rib lesion should be removed for biopsy and referred the plaintiff to a thoracic surgeon. The thoracic surgeon, one Dr. Benoit, operated and removed a portion of the 11th rib which was submitted to the pathologist. The pathologist found no pathological implication in the biopsy submitted. Further X-rays disclosed that the lesion was still present, and it is admitted that the lesion was, in fact, in the 10th rib and not in the 11th, a portion of which had been removed. The family physician conferred with the plaintiff and indicated that because the doctors were concerned about the nature of the lesion which was still present that further surgery was indicated. The same surgeon removed a portion of the 10th rib; and, upon pathological examination, it was determined that the plaintiff did not have any rib cancer.

The abnormality was diagnosed as a benign non-malignant tumor which ordinarily would not prove to be either troublesome or life endangering.

The evidence further disclosed that in 1965 Lockwood Radiological had X-rayed the plaintiff in connection with abdominal complaints, and those X-rays indicated the presence of the rib lesion ultimately removed. The 1965 X-rays clearly revealed the existence of the abnormality of the rib 32 months prior to the two rib operations. The procedures of Lockwood Radiological were such that all X-rays on a specific patient would be kept in the same file and have the same identification number as any prior or subsequent X-rays.

At trial, a comparison of the 1965 X-rays and the 1967 X-rays indicated that the lesion was relatively unchanged in size and shape. Dr. Smith, one of the partners in Lockwood Radiological, testified on cross-examination that if Dr. Courter had taken a few seconds to examine the 1965 X-rays, he would have seen little or no change in the lesion, that this would have almost ruled out metastatic cancer, and that the longer such a lesion showed no growth without change in other symptoms, the more inclined a doctor would be to avoid surgery. The surgeon, Dr. Benoit, testified that had he known before surgery that the abnormality had not grown in 32 months, he would not have operated.

There was a great deal of evidence concerning the condition of the plaintiff before and after the surgery and evidence of permanent disability. The actual damages of $50,000 are not questioned on this appeal, so a detailed recital of the physical condition of the plaintiff is unnecessary.

■ The first claim of error is that the record contains no evidence to support a finding that the defendants failed to exercise the proper degree of skill and learning ordinarily used under the same or similar circumstances by members of their profession. The thrust of this argument is based upon *Haase v. Garfinkel*, 418 S.W.2d 108 (Mo.1967), that in the great majority of

malpractice cases, a submissible case can only be made by expert medical testimony. *Haase* affirmed defendant's motion for a directed verdict on the ground there was no evidence of negligence on that issue. There was no medical testimony in *Haase* in behalf of the plaintiff's case. That is not true in this case. The record here contains the admissions of Dr. Smith, one of the defendants, that the failure of Dr. Courter to examine the 1965 X-ray was not good medical practice and that the failure of Dr. Courter to correctly identify the 10th rib, rather than the 11th, was not good medical practice. In view of these admissions, the plaintiff was entitled to go to the jury on the submitted issues of whether the failure of the employee of the defendant partnership to correctly identify the rib or to check the earlier X-rays was negligence.

■ Defendants' second claim of error is that the defendants were entitled to a directed verdict because there was no evidence of damage, either by reason of the failure to properly identify the rib prior to the first surgery, or from the failure of the defendants to check the prior X-rays. The defendants' argument under this point is based on the view the defendants take of the evidence presented to the jury and ignores entirely the evidence favorable to the plaintiff. The evidence would support a finding by the jury that if the defendants had not misidentified the ribs in question, only one operation would have been necessary and, further, that if the prior X-rays had been examined, an operation might have been unnecessary. It is difficult to conceive of more direct evidence of causation and damage than appears in this case. The argument is without merit. This is not a case where there was no evidence of the causation of the injury. It is a question of which evidence the jury chose to believe. The defendants' evidence and some of the other evidence in the case did indicate, as the defendants argue, that there might have been a decision made to operate even with the knowledge of the prior X-rays and that Dr. Benoit might have made a different decision with respect to the removal of the 10th rib while the first operation was in

progress; but that evidence does not stand alone, and the jury was entitled to draw the inferences from the evidence in support of the plaintiff's verdict.

In *Pedigo v. Roseberry*, 340 Mo. 724, 102 S.W.2d 600 (1937), the evidence presented showed the injury could have resulted from causes other than defendants' acts. In *Williams v. Chamberlain*, 316 S.W.2d 505 (Mo. 1958), there was no medical evidence whatever that the injection was inadequate under the circumstances. Regarding plaintiff's claim that defendant was negligent in failing to remove a broken needle fragment lodged in plaintiff's back for 27 days, the *Williams* court stated such negligence must be established by expert testimony, and the court found none. The absence of expert testimony was also dispositive of plaintiff's claim of negligence in defendant's failure to hospitalize plaintiff. In *Bertram v. Wunning*, 385 S.W.2d 803 (Mo.App.1965), defendant admitted liability for the accident. The sole issue was the nature and extent of plaintiff's resulting injuries. The question was whether plaintiff presented sufficient evidence to establish a causal connection between the accident and a hernia, which was first discovered some three months after the accident. While the plaintiff's doctor testified that the hernia *could* have resulted from the accident, other possible causes were not negated. Such expert testimony, standing alone and without other facts, is not substantial evidence from which a jury composed of laymen would be justified in finding cause and effect. In *Odum v. Cejas*, 510 S.W.2d 218 (Mo.App. 1974), plaintiff relied *solely* upon depositional testimony of a single doctor whose answers were "uncertain opinions" based upon a hypothetical factual situation which was substantially and materially incomplete and inadequate.

Defendants rely heavily on *Kinealy v. Southwestern Bell Telephone Company*, 368 S.W.2d 400 (Mo.1963). But *Kinealy* is merely a combination of *Pedigo* and *Bertram, supra*. In *Kinealy*, the court held plaintiffs failed to prove by substantial evidence that the ditchings caused the land-

falls. The basis for its ruling was that other possible causes for which the company would not be liable were not excluded as causative factors. Further, plaintiffs' expert witness testified in generalities and refused to give his opinion that the ditchings caused, or probably caused, the landfalls. A finding that plaintiffs' losses were caused by the ditching could not have been made without surmise, speculation, and conjecture.

Defendants claim that *Welch v. Frisbie Memorial Hospital*, 90 N.H. 337, 9 A.2d 761 (1939), is identical and controlling. Defendants here argue that the entire responsibility for the decision to operate should be borne by Dr. Benoit. *Welch* is not convincing on this point. In *Welch*, plaintiff alleged that the failure of defendant's servant, a laboratory technician employed by defendant, to make an X-ray study of plaintiff's right leg, including the ankle joint, resulted in personal injuries to plaintiff. The plate taken by the technician included the knee and upper three-fifths of the leg, but did not show the ankle joint. An oral report was made to Dr. Grigg that the X-ray was negative, and Dr. Grigg treated plaintiff for a sprained ankle. Three months later, a subsequent X-ray examination disclosed that plaintiff had a fracture of both bones of the ankle. Plaintiff's theory of the case rested upon the contention that Dr. Grigg's improper treatment was induced by his justifiable belief that an X-ray of plaintiff's ankle had been taken. *If* it was established that Dr. Grigg examined the X-ray and thus learned that the ankle was not included before he treated plaintiff, the foundation of plaintiff's case would be destroyed. Under such circumstances, where there was evidence tending to establish that Dr. Grigg *knowingly* undertook to diagnose and treat the ankle injury without an X-ray of the joint, it was his responsibility, not that of the hospital. The *Welch* court concluded that the failure of the trial court to instruct the jury on this matter was error. Unlike the evidence in the *Welch* case, which could support a jury finding that Dr. Grigg *knew* the X-ray did not show the ankle *before* he treated it,

there is no evidence in the present case that Dr. Benoit *knew* of the existence of the '65 X-ray *before* he performed either of the operations on Smith. Nor did Dr. Benoit know before the operation that the rib containing the lesion was in fact in the 10th rib and not in the 11th rib as reported by Lockwood Radiological.

■ Defendants also complain of error in the giving of plaintiff's instruction No. 5, a modification of MAI 4.01, by the addition of the addendum required by MAI 7.01, contending that the modification created an improper comment on the evidence and permitted the jury to assume the negligence of the defendants. The specific complaints of modification are that the plaintiff improperly modified the language, "award the plaintiff," by inserting the word "determine" and that the substitution of "defendant Lockwood Radiological negligent acts" as a substitution for the "occurrences mentioned in evidence" were both improper.

The argument entirely ignores the factual and procedural posture of this case at the time it was submitted to the jury. Dr. Benoit, the surgeon, was originally a defendant in the case upon allegations that he was negligent in the performance of the surgery upon the plaintiff. A settlement was reached with Dr. Benoit during the first trial, and he was not in the case during the second trial. Thus, MAI 7.01 mandated the addendum referring to the necessity for the jury to reduce the damages by the amount paid on behalf of Dr. Benoit.

Since MAI 7.01 mandated the addition of the addendum, the Notes on Use of MAI 7.01 are controlling on the first modification, the insertion of the word "determine." The language of the Notes on Use, MAI 7.01, is: "Delete from the appropriate measure of the damage instruction the phrase 'award the plaintiff' and substitute therefor the word 'determine.'"

The modification by insertion of "determine" was specifically and directly authorized in the posture of this case.

The word, "occurrence," has been held to refer to the defendant's wrongful act. *Nel-*

*son v. R. H. Macy & Co.*, 434 S.W.2d 767 (Mo.App.1968), but it has likewise been held that where the plaintiff's theories of recovery were submitted disjunctively in a malpractice action, it was error to use the word "occurrence," without modification since the jury could have found the plaintiff entitled to recovery on only one of the two grounds submitted and yet have awarded damages for all injuries received when the instruction used the word "occurrence" without modification. *Vest v. City National Bank and Trust Company*, 470 S.W.2d 518 (Mo.1971). The *Vest* case involved an injury and subsequent treatment by doctors with a variety of allegations of malpractice, and it was submitted on alternative theories of negligent treatment or abandonment of the patient. The court pointed out that the plaintiff in that case might have been entitled to recover for all the injuries sustained, including those suffered in the fall or only a portion of them, depending upon which theory of liability the jury accepted, and that, therefore, an instruction which did not limit them to the particular acts of negligence they found would be erroneous.

In the instant case, the facts are peculiar, but they are analogous to the facts in *Vest*. The plaintiff here suffered two operations. The submission was on alternative disjunctive theories of liability. On the submission with respect to the failure to examine the early X-rays, it was the plaintiff's theory, and there was evidence to support it, that if the defendants' agent had examined the early X-rays, no operations would have occurred. On the alternative submission, the failure to properly identify the rib to be removed, a finding by the jury on that ground would have necessarily required the jury to consider only the damages flowing from the second operation. Thus, the measure of damages in this case would depend upon the jury's findings with respect to the negligence of the defendants, and the use of the simple word, occurrence, in the instruction would have misled the jury and been confusing since they might not have been certain of whether it referred to the first operation or the second operation or both. In the circumstances of this case, some

modification of MAI 4.01 was required. The defendants' reliance upon *Murphy v. Land*, 420 S.W.2d 505 (Mo.1967) is misplaced. Defendants cite *Murphy v. Land* for the proposition that any deviation from the MAI will be presumed prejudicially erroneous, but the later case, *Brown v. St. Louis Public Service Company*, 421 S.W.2d 255 (Mo. banc 1967), makes it clear that the word deviation refers to a change in MAI not based on a necessary modification under the facts in the particular case. Every modification of MAI required by the facts, as in this case, is not presumptively prejudicial because it does not literally follow MAI. Where a modification is required under the Notes on Use or the existing case law, the question becomes one of the propriety of the modification. The issue then becomes one of whether the particular modification made was prejudicial to any right of the defendants. In that connection, the instructions must be read as a whole. *Jefferson v. Biggar*, 416 S.W.2d 933 (Mo.1967). The standard assumption of facts instruction was given, and the verdict-directing instruction referred to the negligence of the defendant partnership. The argument of plaintiff is contained in the transcript; and, in that argument, the plaintiff advised the jury of the alternative theories upon which the plaintiff was proceeding and pointed out the difference between the theory predicated upon the misinformation as to the correct rib and the theory relating to the earlier X-rays. Looking to the entire record and all the instructions, the trial court's comment in its memorandum that no prejudice occurred to the defendants because the jury could only have understood the modification as referring to the negligent acts described in the verdict director seems particularly appropriate. There is no prejudice shown to the rights of the defendants in the instant case. It is to be noted that the defendants offered no evidence of a difference in the damage to the plaintiff arising from the first or the second operation, the defendants' theory with respect to the damages being that the plaintiff suffered no permanent damage, a fact which the jury

obviously found against them. The modification under the peculiar facts of this case and the evidence presented is not prejudicial. However, this holding is not to be considered as approbation of the particular language used in the instant case, and the finding of no prejudice in this case rests upon the peculiar fact situation existent.

In a separate point, the defendants complain of instruction No. 5, the damage instruction, contending that it conflicts with instruction No. 3, the verdict director, is confusing and misleading, and authorizes the award of damages for which no recovery could be had.

Neither the claim that the instruction authorized the award of damages improperly, nor the claim that the instruction was confusing and misleading, was raised in the motion for a new trial. Rule 78.07 precludes review of allegations of error not contained in the motion for a new trial. The question of conflict with the verdict director was preserved. The trial court in its memorandum filed with the order overruling the motion for a new trial agreed that the form of the damage instruction was improper. Obviously, it would have been preferable to use a phrase referring to the verdict director. A prerequisite to setting aside the judgment for the giving of an erroneous instruction is that it constitutes prejudicial error "materially affecting the merits of the action." Rule 84.13(b); *Collier v. Roth*, 515 S.W.2d 829 (Mo.App. 1974). The trial court stated that it did not believe the error was prejudicial. The trial judge cited two reasons for his finding that no prejudice occurred. First, the trial court pointed out that the language in the instruction "Lockwood Radiological's negligent acts" could have only been understood by the jury as a means of identification of the elements set out in the verdict-director instruction where the defendants were so described. The trial court also characterized the negligence as being admitted by the defendants and "proven" by plaintiff.

The question of prejudice resulting from error in instructions requires a consideration of the entire record. When this record is considered as a whole, it must be judicially determined that the characterization of Lockwood Radiological's negligent acts was not prejudicial. The acts submitted, the failure of Dr. Courter to properly locate the rib and view the early X-rays were admitted and further were admitted to be mistakes and not good medical practice. The thrust of the attempted defense to the misidentification of the rib was that the identification of the rib was the primary responsibility of Dr. Benoit. Thus, the fact of misidentification was not disputed. The defense to the failure to view the early X-rays was that it would still have been necessary to operate since its benign nature could not have been determined from the X-rays, again not directly a challenge to the fact that the early X-rays were not viewed.

In this posture of the case, the use of the questioned modification is not prejudicial on the issue of the conflict with the verdict director, but, again, it must be said that this ruling depends upon the record here and not the language utilized.

Defendants vigorously urge that the court erred in submitting the issue of punitive damages to the jury on the grounds that there was no evidence in the case sufficient to support such a submission. As a predicate to the discussion of this point, some comment on the existing state of the law with respect to the submission of punitive damages is necessary. First, it must be noted that the plaintiff in this case submitted the issue of punitive damages by the use of MAI 10.02. The defendants have cited a great many cases in which the phrases, "reckless," "wanton," "wilful," "malicious," and "utter disregard," have been used interchangeably and without much analysis. Defendants assert that, "It is well established in Missouri that punitive damages may not be awarded where the defendant's conduct amounts only to a failure to exercise the care due under the circumstances. Evidence of mere negligence will not justify an award of punitive damages." The defendants' position is overstated. The last controlling decision of the

Supreme Court of Missouri en banc with respect to the submission of punitive damages concurrently with a negligence submission is *Sharp v. Robberson*, 495 S.W.2d 394 (Mo. banc 1973). In *Robberson*, plaintiff submitted a negligence theory against the defendants and also submitted MAI 10.02. The trial court ordered remittitur of the punitive damages assessed by the jury, believing it had erred in submitting the issue to the jury. The plaintiff refused remittitur and appealed to the Springfield Court of Appeals. Both the Springfield court and the trial court relied upon *Ervin v. Coleman*, 454 S.W.2d 289 (Mo.App.1970), while the plaintiff relied upon *Reel v. Consolidated Inv. Co.*, Mo., 236 S.W. 43 (1921). Sufficiency of the evidence and the form of the instruction were not involved in *Robberson*, but the court recognized the issue as being one of whether or not, assuming there was sufficient evidence, the plaintiff could submit under a negligence theory and also under a theory permitting recovery of punitive damages upon the test of MAI 10.02 that such conduct "showed complete indifference to or conscious disregard for the safety of others." The Supreme Court in *Robberson* extensively reviewed both the *Ervin* and the *Reel* cases. To the extent that *Ervin* denied as a matter of law a recovery for actual damages predicated on ordinary negligence and punitive damages predicated upon the defendant's complete indifference to or conscious disregard for the safety of others, it was overruled by *Robberson*, and *Robberson* heavily relies upon *Reel* and the later case of *Eoff v. Senter*, 317 S.W.2d 666 (Mo.App.1958). Thus, the submission in this case is clearly authorized insofar as the instructions correctly state the law concerning the submission of both punitive and actual damages predicated upon a negligent act. The Supreme Court, in *Robberson*, indicated that the evidentiary support for the instruction must be sufficient and to that extent, the discussion above does not rule the question presented by the defendants in this case but does focus upon the real issue to be decided. That issue is whether there was evidence sufficient to support the submission under

the rule of law announced in *Robberson*, and not upon the assertion by the defendants that a lack of due care cannot also afford a basis for a finding of punitive damages.

■ In determining the issue of sufficiency of the evidence to support the submission of punitive damages, the evidence most favorable to the plaintiff's submission and all the inferences favorable to that submission are to be considered. The test for this court to apply in determining whether there is a sufficient quantum of evidence to justify the submission of punitive damages is whether reasonable men could have found that the acts of negligence proven in this case had the quality of conscious disregard or exhibited a complete indifference to the safety of this plaintiff. *Eoff, supra*, at 672, states it another way by saying that the essential element may be defined as "knowledge on the part of defendant that his conduct created an unreasonable risk of bodily harm to the plaintiff, and knowledge on the part of defendant that there was a high degree of probability that substantial harm would result to plaintiff." In the very early case of *Nichols v. Bresnahan*, 357 Mo. 1126, 212 S.W.2d 570, 573 (1948), the rule was stated as follows: "The actor's (defendant's) conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." This language, which is a citation with approval of 2 Restatement, Torts, p. 1294, again postulates the basis for a submission under MAI 10.02.

Looking now to the evidence itself and without detailing again the factual basis in its entirety, the evidence in this case favorable to the plaintiff shows that Dr. Courter, the employee of the defendants, failed to properly identify the plaintiff's rib, mistakenly saying it was the 11th and not the 10th

rib. The evidence proves without question that the early X-rays of the plaintiff were in the hands of Dr. Courter at the time he made his diagnosis of the plaintiff's condition. This is proven not only directly by the evidence of Dr. Smith as to the practice followed, but inferentially, since the X-rays all bore the same patient number, were all contained in the same X-ray folder, and the X-ray folder indicated that the characterization of the X-rays was made in each instance on the outside of the same folder. The X-rays also show by Dr. Smith's testimony that the earlier X-rays as noted on the outside of the envelope were X-rays that any doctor would have known contained an X-ray of the patient's stomach and the rib area. Thus, only two inferences are possible with respect to the conduct of Dr. Courter in failing to note the earlier X-rays in his report. One inference is that he did not look at the X-rays at all which Dr. Smith said would require only a few seconds. The other inference is that in looking at those X-rays he failed to see the lesion in the earlier X-rays. It is apparent from the fact that plaintiff's lawyer discovered the earlier lesion in examining the X-rays at the first trial that the discovery of the lesion required no extraordinary medical skill. As has been earlier noted, the failure on the part of Dr. Courter to accomplish these acts resulted in the plaintiff having two operations where perhaps none would have been required, and it is clear from the evidence that the plaintiff has sustained physical damage as a result of the operations. It was for the jury to weigh those facts and determine whether they constituted a conscious disregard for the safety of the plaintiff or complete indifference to his safety.

Referring again to the quotation from *Bresnahan* and the Committee's Comment under MAI 10.02 reciting that quotation, the evidence demonstrates that Dr. Courter either did an act or failed to do an act which it was his duty to the plaintiff to do. From the medical evidence in this case that Dr. Courter knew or had reason to know of facts that would lead him to realize that his conduct created an unreasonable risk of bodily harm to this plaintiff, the surgery unquestionably being bodily harm in and of itself, and that his actions also involved a high degree of probability that harm would result, it is difficult to see how it could be argued that reasonable men could not have found those facts upon this present record. It must be concluded that evidentiary support exists in this case for the award of punitive damages against the defendant partnership.

■ The defendants question in a separate point the form of instruction No. 6, which was MAI 10.02. The ground of the objection is twofold. The defendants first contend that it permits a recovery against a non-existent entity and premised upon that that it fails to advise the jury to determine punitive damages separately against the two defendant partners. The defendants' argument is that the inclusion of the phrase "defendant Lockwood Radiological" in the punitive damage instruction submitted to the jury an instruction to find against a non-existent entity, the defendants properly contending and citing cases for the proposition that an action cannot be maintained against a partnership and that a judgment against a partnership is absolutely void. The difficulty with the first portion of defendants' argument is that the suit was properly filed against the partners, and the judgment as finally rendered was against both of the partners. It should be noted in this connection that pursuant to a stipulation of the parties in chambers before the trial commenced the parties agreed to refer to the partnership as Lockwood Radiological. All of the instructions in the case refer to the defendants as Lockwood Radiological pursuant to that stipulation, and no issue was raised by the defendants at the time the case was submitted to the jury as to the designation of the defendants nor, for that matter, do the defendants now claim that any of the other instructions so referring to the defendants are erroneous in form except the form of verdict. After the jury returned its verdict, the trial court amended the verdict by entering judgment against the individual partners as the pleadings

would require. The verdict, of course, because of its form, being a single submission in favor of the plaintiff or in favor of the defendants, did not name the party against whom the verdict was rendered, simply being a recitation that the jury found the issues for the plaintiff and against the defendants and assessed the damages.

It is also true that the defendants, Drs. Walker and Smith, admitted the agency of Dr. Courter and the existence of a partnership. The entire suit was tried upon the tacit understanding that Drs. Smith and Walker were, in fact, liable, if at all, only vicariously, and the defendants do not now question the basis of that liability upon any claim that agency was an issue or that the jury was misled in its determination of liability on the part of the co-partners because of the acts of their admitted employee. Further arguing this point, defendants urge that *State ex rel. Hall v. Cook*, 400 S.W.2d 39 (Mo. banc 1966) requires that when a partnership is sued for punitive damages for tort, the liability is individual and not joint and that, therefore, there should have been separate submissions as to the partners. Defendants buttress this argument by claiming that the defendant, Dr. Walker, did not participate in any of the acts that gave rise to the plaintiff's claim, but that Dr. Smith actively participated with Dr. Courter in the acts about which the plaintiff complains. Dr. Benoit testified that Dr. Smith looked at the X-rays with him prior to surgery, but Dr. Smith, at least by implication, denied this since Dr. Smith asserted that if he had looked at the X-rays he would have corrected Dr. Courter's mistake with respect to the identification of the rib. There was some testimony by Dr. Smith that he did not supervise Dr. Courter's work, but this, he said, was the proper medical training technique for a resident, to permit the resident to make independent judgments in the performance of his duties.

Be that as it may, the entire premise of defendants' point in this regard is at war with the allegation of error they asserted in their motion for new trial. The defendants' motion for a new trial asserted error in the giving of MAI 10.02 instruction on the ground that it was error to allow punitive damages against Smith and Walker based on the acts of Dr. Courter, and that there was no evidence of the culpability of either the defendant Smith or Walker. The same paragraph of the motion for new trial asserted that the instruction was error because it did not provide for "separate verdicts" for punitive damages against the defendants Walker and Smith. The question of whether a partner actively participating in a tort in which an employee of a partnership also participates which results in a punitive damage award is liable for separate punitive damages individually need not be reached or decided in this case. The trial court correctly analyzed the question presented by the instruction and the defendants' claim of error when the court asserted that the evidence in the case showed no difference in the degree of culpability between the two defendants since they were responsible, if at all, vicariously, and their responsibility was the same and equal. The trial court considered that this was a case in which the plaintiff would not have been allowed to prove the net worth of the individual defendants, a proof which the plaintiff did not attempt. The trial court cited in its memorandum *State ex rel. Kubatzky v. Holt*, 483 S.W.2d 799 (Mo.App. 1972), and *State ex rel. Hall, supra*. *Kubatzky, supra*, extensively reviews the issue of whether the wealth of the defendant is admissible in a punitive damages case and, relying upon *State ex rel. Hall*, ruled that where the evidence supported separate submissions, the individual wealth may be shown. As indicated, there was no submission against the individual defendants, the submission being entirely based upon the acts of Dr. Courter. The evidence discloses such a submission against either of the defendant doctors would have been highly questionable and certainly inappropriate under the verdict director given. The jury was confined to the issues presented by the verdict director which revolved entirely around the action of Dr. Courter and in no way was the punitive damage submission proper against the individual defendants.

It was, therefore, not necessary to submit the issue of punitive damages separately against the individual doctors comprising the partnership.

■ The defendants repeat the argument with respect to instruction No. 6 in attacking the form of instruction No. 9 which was taken from MAI 36.11 and is the form of verdict for submission of actual and punitive damages against a single defendant. The defendants assert that the plaintiff should have submitted MAI 36.12, the form of verdict for submission against multiple defendants. What has been said with respect to instruction No. 6 above is equally applicable and dispositive of this point. There was no necessity or basis for a submission of the punitive damages claim against the partners separately, and the verdict based on vicarious liability was a single verdict.

■ In a final point, the defendants question the propriety of the trial court's action in entering judgment against the defendants, Arthur B. Smith and John W. Walker, for punitive damages. Defendants repeat the argument that the jury verdict was returned against a non-existent entity, failed to make separate assessment of punitive damages, and was not in conformity with the verdict. The forms of verdict given to the jury insofar as they referred to verdicts in favor of the plaintiff did not refer to the defendants in any fashion, the form being as set out in MAI 36.11. The verdict, therefore, did not indicate against whom the judgment should be entered, and the defendants are correct in their assertion that *First National Bank of Collinsville v. Goldfarb*, 527 S.W.2d 427 (Mo.App.1975), provides that when the verdict does not indicate against whom it is returned, the record is to be examined to determine the appropriate judgment. Also, Rule 74.31 permits correction of defects in a judgment which do not affect the right or justice of the matter.

The defendants do not question the action of the trial court in entering judgment against the partners for the actual damages in the case, the defendants admitting that the partners would be jointly and severally liable for those damages. Defendants insist, however, that under the authority of *State ex rel. Hall v. Cook, supra,* the judgment against these partners should have been separately assessed; and, if they are jointly and mutually obligated, the burden would fall upon the one from whom the plaintiff could collect his judgment. What has been said heretofore with respect to the fact that this record does not support a submission of punitive damages against the partners separately is a sufficient answer to this question. This partnership was liable for punitive damages by reason of the acts of Dr. Courter, the agent of the partners. In *Johnson v. Allen*, 448 S.W.2d 265 (Mo. App.1969), the court held that the form in which the employer did business should not govern the question of whether there was a right to recover punitive damages. If the position of the defendants were sustained in this case, an anomaly would be created; corporate and individual defendants could be held to respond for the acts of their agent justifying the imposition of punitive damages, but partnerships could not unless there was evidence to justify a separate submission against the defendant partners in accordance with the rule of *State ex rel. Hall v. Cook, supra.* This case does not require a determination of the obligations of the individual partners with respect to the judgment for punitive damages, it being sufficient for the issues here presented to hold that the judgment was properly entered against the defendant partnership.

The judgment of the trial court is affirmed.

All concur.