Donald SHETKA, et al., Respondents,

v.

KUEPPERS, KUEPPERS, VON FELDT AND SALMEN, a partnership, et al., Appellants,

v.

T. Jay SALMEN, et al., Respondents.

No. C1–89–1671.

Supreme Court of Minnesota.

May 11, 1990.

Richard J. Thomas, Geraghty, O'Loughlin & Kenney, P.A., St. Paul, for appellants.

Anthony K. Berg, Salmen, Brinkman & Martinson, P.A., St. Paul, for T. Jay & Richard C. Salmen.

Richard H. Bend, Bend & Beckjord, P.A., St. Paul, for Donald Shetka, et al.

Richard E. Berger, St. Paul, for respondents.

KELLEY, Justice.

Appellants are individual partners in the former law firm of Kueppers, Kueppers, Von Feldt and Salmen. The court of appeals by an order dated October 3, 1989, denied their petition for a writ of prohibition, which, if granted, would have restrained a Ramsey County district judge from enforcing an order requiring appellants to respond to discovery requests. The respondents sought to discover the amount of the personal assets of each appellant for use in assessing against each punitive damages for which each might be vicariously liable by virtue of alleged professional malpractice of one of the firm's former partners. We reverse, and order the issuance of a writ of prohibition.

At all times material to this litigation, T. Jay Salmen was a partner in, and Richard J. Salmen was an associate of, the law partnership known as Kueppers, Kueppers, Von Feldt and Salmen. The other partners in the firm were these appellants: Fred A. Kueppers, Fred A. Kueppers, Jr., and C.E. Von Feldt. At all material times respondents Donald Shetka, William T. Shetka, and Richard R. Shetka were the sole shareholders and officers of George Shetka & Sons, Inc. In April 1981, when that corporation was experiencing financial difficulty, the Shetkas sought legal advice from T. Jay Salmen in regard to $180,000 of unsecured loans the shareholders had previously made to the corporation. T. Jay Salmen advised the Shetkas to document the indebtedness by the issuance of a corporate note secured by a mortgage. After that had been completed, he subsequently, in July, advised them to convey certain real property owned by the corporation to themselves as further security. In August, T. Jay Salmen recommended that the corporation file for voluntary chapter 11 bankruptcy protection to forestall foreclosure of certain liens on the corporate real estate. During the resulting bankruptcy proceedings, the attorney for the creditor's committee took the position that the corporate note, mortgage, and deed to the individual Shetkas constituted preferential transfers subject to being set aside unless the individual Shetkas subordinated their mortgage to the interests of the unsecured creditors. The Shetkas now claim their mortgage was executed under circumstances which would exclude it from the bankruptcy law's definition of a preferential transfer.

In September 1987, the Shetkas commenced this legal malpractice action against the law firm, against the firm's individual partners, and against its associate, Richard C. Salmen. The third amended complaint alleges that T. Jay Salmen was negligent in his representation in a variety of ways. It claims he never advised the Shetkas of alternatives to bankruptcy for the corporation, or that the mortgage the corporation had given them could be set aside as a voidable preference, and that he induced them to sign away rights they had under that mortgage, and that he initially failed to disclose and later concealed from the bankruptcy court the existence of that mortgage. They also alleged that T. Jay Salmen, as well as the partnership, represented both the corporation and the shareholders in the bankruptcy proceeding, and that this joint representation was improper because of the conflict of interest between the shareholders and the corporation, and that T. Jay Salmen had concealed from them that conflict of interest. No assertion in the complaint, however, advances any claim other than that from the inception of the representation of the Shetkas and/or the corporation in April 1981, all of the Shetkas' contacts with the law partnership had been solely with and through T. Jay Salmen and with none of the other partners.

The complaint itself clearly alleges that T. Jay Salmen was the only law firm partner who rendered respondents advice concerning personal or corporate matters during that period. Notwithstanding that

the relationship between the respondents Shetkas and the law firm had been confined to consultation with Salmen, respondents persuaded a Ramsey County district judge that they had presented sufficient prima facie evidence to justify the assertion of a claim for punitive damages against not only Salmen personally, but also against the law firm and its other partners who personally were not involved in representing the Shetkas. That judge then authorized respondents to serve a third amended complaint asserting the punitive damage claims. *See* Minn.Stat. § 549.191 (1988) (claim for punitive damages may not be asserted in a pleading absent a court order finding prima facie evidence to support the claim).[1] After the third amended complaint was served, respondents demanded discovery of personal financial information from each of the individual partners (appellants), ostensibly for the purpose of submitting that financial condition in evidence as an element of their punitive damage claim. *See* Minn.Stat. § 549.20, subd. 3 (1988). Appellants' application for a protective order to prevent such discovery was denied by the trial court, and, instead, she ordered them to respond. The court of appeals, as part of its order denying appellant's peti-

tion for a writ of prohibition, noted "[w]hether the financial information sought is discoverable where the claim for punitive damages is based on vicarious liability is an issue that should be determined by the Minnesota Supreme Court" and, accordingly, it specifically refrained from expressing its opinion as to the propriety of the trial court's action. Nonetheless, it declined to grant the writ.

■ For the purposes of this appeal, appellants concede that if Salmen is found liable for punitive damages arising from services rendered to respondents within the scope of the partnership business, that they, as his co-partners, may by statute ultimately be vicariously liable for the punitive damage award. However, they contend, and we agree, that even if they may be vicariously liable for all or a portion of a punitive award, it does not follow that the financial condition of the individual nonparticipating partners is relevant to the jury's computation of the amount of the punitive damage award under Minn.Stat. § 549.20, subd. 3 (1988) (the statute enumerating factors relative to the establishment of the amount of a punitive damage award). Our consideration of Minn.Stat. §§ 323.01–323.43 (1988) (the Uniform Partnership Act), as

---

1. In the present proceeding, appellants do not directly challenge the district court's order authorizing the amendment of the complaint to include a claim for punitive damages against the law firm and against them individually as partners. However, to determine whether the personal financial condition of each partner is discoverable, as a preliminary matter we must ascertain against which party or parties the respondents have sustained the burden of presenting prima facie evidence justifying the amendment of the complaint. No dispute exists that respondents presented sufficient prima facie evidence to support a claim against T. Jay Salmen. In addition, respondents believe they have a prima facie claim against appellants, as partners of the law firm, because they may be vicariously liable for Salmen's actions or inactions. They also claim the firm itself, by failing to discover and warn them of Salmen's alleged conflict of interest, should be subject to punitive damages. Appellants counter that even if Salmen had a conflict of interest, respondents have utterly failed to present any evidence to support a conclusion that the firm's conduct was of such a nature to support a punitive damage claim. We agree with appellants. "Prima facie evidence" must support a claim that the firm acted with

"willful indifference." Minn.Stat. §§ 549.191, 549.20, subd. 1 (1988). When presented with a motion to permit assertion of a punitive damage claim, the function of the trial court is to do more than "rubber stamp" the allegations in the motion papers. Rather, the judge must ascertain whether there exists prima facie evidence that the defendants acted with "willful indifference." *Cf. Blumberg v. Palm*, 238 Minn. 249, 253, 56 N.W.2d 412, 415 (1953). In this case, excluding the allegations relating to the vicarious liability of the partnership for Salmen's actions, the memorandum and affidavit in support of respondent's motion fell far short of presenting prima facie evidence that any action or inaction of the partnership rose to the level of "willful indifference." Indeed, it is doubtful that a claim justifying punitive damages against nonparticipating partners or the partnership could ever be supported by "prima facie evidence" of "willful" wrongdoing by the partnership and nonparticipating partners. Therefore, in this opinion, we limit our consideration to the consequences of potential vicarious liability to which each of the appellants may be exposed as a result of any of Salmen's wrongdoing that might constitute willful indifference.

well as the public policy underlying Minn. Stat. § 549.20, subd. 3, leads us to the conclusion that for the purpose of determining the amount of a punitive damage award, the financial condition of a nonparticipating, nonculpable vicariously liable party is irrelevant, and, therefore, not discoverable.

Although this court has not restricted discovery of information in a civil action to evidence admissible at trial, for nearly four decades we have required that information subject to discovery must, at least, be likely to lead to relevant admissible evidence. Minn.R.Civ.P. 26.02(a). Under Minn.Stat. § 549.20, subd. 3 (1988), the financial status of a defendant may be relevant to determine a punitive damage award if the defendant's conduct demonstrates "willful indifference to the rights or safety of others." Thus, assuming respondents are able to establish that threshold requirement, the financial condition of T. Jay Salmen would be either relevant or be likely to lead to relevant evidence. The issue presented us by this case, however, is whether the financial condition of the individual nonparticipating, nonculpable partners, whose liability for punitive damages is only vicarious, is discoverable.

An act of a partner "apparently carrying on in the usual way the business of the partnership" usually binds the partnership. Minn.Stat. § 323.08 (1988). Thus, if a partner commits a wrongful act or omission while acting "in the ordinary course of the business of the partnership" the partnership is liable, for compensatory and apparently, as well, punitive damages. *See* Minn.Stat. § 323.12 (1988). It seems clear, therefore, that if Salmen committed wrongs while acting within the scope of the partnership's business which justify an award of punitive damages, the Kueppers law firm possibly might be liable. Moreover, because all partners are jointly and severally liable "for everything chargeable to the partnership" under Minn.Stat. §§ 323.12, 323.14 (1988), these appellants, although not directly liable for Salmen's alleged wrongful acts, are subject to statutory vicarious liability. Since enactment of the Uniform Partnership Act in 1921, part-

ners are not considered to be the agents of each other; instead each partner is considered to be the agent of the partnership itself. *See* H. Reuschlien and W. Gregory, *Handbook on the Law of Agency and Partnership* 267 (1979). Thus, the Uniform Partnership Act technically changed the common law rule, which considered each partner to be the agent of his or her co-partners, to a statutory rule that instead makes the partnership the principal, with statutory respondeat superior liability for any wrongful acts committed by a partner. Nonetheless, the nonacting partners, rather than being liable as principals, under the Uniform Partnership Act are ultimately liable by virtue of a statutorily created vicarious liability. *See* H. Reuschlien and W. Gregory, *Handbook on the Law of Agency* at 306; *Levy v. First Penn. Bank*, 338 Pa.Super. 73, 487 A.2d 857, 863 (1985). Understanding this technical alteration in the nature of the partner's liability, although normally not of great significance, is helpful to an analysis of the issue in this case.

Heretofore, we have not been called upon to address the issue whether a claim of vicarious liability for punitive damages requires those exposed to such liability to reveal, before judgment, their personal financial condition. In this case the vicarious liability of appellants is defined by statute. But even in cases involving common law vicarious liability of partners, other jurisdictions which have addressed the issue have concluded, as we do, that when the liability is vicarious, the financial condition of the nonculpable defendant is not relevant to the determination of the punitive damage issue. *See, e.g., Smith v. Courter*, 575 S.W.2d 199 (Mo.App.1978), a medical malpractice action in which the plaintiff sued the individual medical partners for compensatory and punitive damages based on the negligent actions of an employee. The plaintiff sought punitive damages and wished to base that award on the finances of the individual partners. The court recognized that because liability of the partners for the acts of the employee is vicarious, plaintiffs should not be al-

lowed to base a punitive award on the net worth of the individual partners. *Id.* at 209.[2]

In an analogous setting, a recent Wisconsin case likewise held that where a defendant's liability has been vicariously created by statute, the wealth of that defendant is not discoverable for the purpose of assessing punitive damages. Although not a case involving the statutory vicarious liability of partners under the U.P.A., *Franz v. Brennnan*, 150 Wis.2d 1, 440 N.W.2d 562 (1989), did involve a statutory vicarious liability for punitive damages which Wisconsin had placed on parents whose minor child had caused another's injuries by operation of a motor vehicle. There, as here, the plaintiffs contended that the personal finances of those vicariously liable (the parents) were relevant. In rejecting that assertion, the Wisconsin court ruled that since the underlying purpose of allowing a plaintiff in a punitive damage case to present the factfinder with evidence of the wealth of the defendant is to aid the jury in calculating an award which will both penalize and deter wrongdoing, punitive damages should not be based on the financial status of the statutorily vicarious liable parents because they were not the wrongdoers. *Id.* at 8, 440 N.W.2d at 566. In its ruling the court noted that punitive damages are "intended as a personal penalty for the actual wrongdoer, and its extension to others who were not themselves the actual perpetrators of the conduct should be limited." *Id.* (quoting *Jacobson v. Superior Court*, 154 Ariz. 430, 433, 743 P.2d 410, 413 (Ct.App.1987)).

■ It seems to us that analysis is persuasive. A punitive damage award operates not to compensate an injured party, but rather to penalize or punish a wrongdoer and discourage him and others from engaging in similar future conduct. *Melina v. Chaplin*, 327 N.W.2d 19, 20 n. 1 (Minn.1982); Restatement (Second) of Torts § 908, comment a (1977). When such pun-

ishment is "exacted, it must be certain that the *wrongdoer being punished* because of his conduct actually caused the plaintiff's injuries." *Collins v. Eli Lilly Co.*, 116 Wis.2d 166, 202, 342 N.W.2d 37, 54 (emphasis added), *cert. denied sub nom. E.R. Squibb & Sons v. Collins*, 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984). The Minnesota legislature has attempted to ensure that punitive damages are fairly and effectively assessed on an individual basis by factoring into the consideration of the amount of the award elements which include the degree of the defendant's culpability, the seriousness of the defendant's acts, effect on the public, and the wrongdoer's ability to pay. Minn.Stat. § 549.20, subd. 3 (1988). We agree with the Maryland court, "Punitive damages, in essence, represent a civil fine, and as such, should be imposed on an individual basis." *Embrey v. Holly*, 293 Md. 128, 142, 442 A.2d 966, 973 (1982).

To prevent a plaintiff who asserts a claim for punitive damages from introducing the financial condition of nonculpable partners in no way frustrates his or her full recovery. Punitive damages are not compensatory. *Eisert v. Greenberg Roofing & Sheet Metal Co.*, 314 N.W.2d 226, 228 (Minn.1982). In effect, they are a windfall to the plaintiff. Our concern is to assure that an award of punitive damages functions as intended—to punish and to deter wrongful conduct—not to extort exorbitant settlement awards. Even should we assume that Salmen did conduct business with willful indifference towards the rights of respondents, we fail to comprehend how imposition of punitive damages, computed by inclusion of the financial condition of the nonculpable partners, will either punish or deter Salmen or others in similar future conduct.

As indicated earlier, if Salmen's activities in the course of the partnership business are of sufficient magnitude to justify an award of punitive damages, the obligation under the statute, by virtue of the doctrine

**2.** Where, however, unlike either *Smith v. Courter* or this case, evidence exists to support a finding that the partners personally acted in a way to support a claim for punitive damages, discovery of the personal financial condition of those partners was allowed. *See State ex rel. Hall v. Cook*, 400 S.W.2d 39, 42 (Mo.1966).

of respondeat superior, becomes that of the partnership. Likewise, if the partnership is liable and unable to respond,[3] the nonculpable partners may be vicariously liable under the statute. However, were we to permit plaintiffs to factor in the assets of the nonacting, nonculpable partners who are only vicariously liable by virtue of the Uniform Partnership Act, any correlation between the amount of a punitive damage award and the conduct of the wrongdoer would become extremely tenuous, if not nonexistent. To limit the introduction of the financial condition to that of those who actively perpetrated the wrongful conduct, helps to ensure that any amount awarded as punitive damages relates to the culpability of the wrongdoer. That limitation precludes the introduction at trial of evidence of the financial state of the nonculpable partners. It follows, therefore, that discovery directed to ascertaining such information is not relevant nor, if furnished, would the information lead to relevant admissible evidence.

Even so, respondents urge that we should not issue a writ of prohibition because only in exceptional cases will an appellate court interfere with tne judicial discretion of a trial court. Undoubtedly, the trial judge has wide discretion to issue discovery orders and, absent clear abuse of that discretion, normally its order with respect thereto will not be disturbed. However, when a trial court orders production of nondiscoverable information, a writ of prohibition is the appropriate remedy so long as no other adequate remedy at law exists. *Thermorama, Inc. v. Shiller,* 271 Minn. 79, 83–84, 135 N.W.2d 43, 46 (1965). Discovery of an individual's personal financial situation is extremely personal, and a refusal to issue the writ would result in an intrusive invasion into this very private area. Any other remedy, such as post trial or appellate review, would be utterly inadequate to protect against that invasion.

In conclusion, we reverse the order of the court of appeals, which refused to issue the writ, and order the issuance of a writ of prohibition preventing the Ramsey County District Court from compelling discovery of the financial condition of appellants.[4]

---

3. The evidence suggest that the law firm partnership has been dissolved.

4. Of course, the financial condition of T. Jay Salmen is discoverable. Also it should be understood our decision only relates to prejudg-

ment discovery of the financial condition of nonculpable partners. Obviously, their assets might be discoverable in ancillary efforts to collect any judgment against them for either compensatory or punitive damages assessed against the partnership.