259 So.2d 757 (1972)
Robert B. RAGLAND, Appellant,
v.
Richard P. CLARSON, t/d/b/ As Richard P. Clarson and Associates, Appellee.
No. O-321.
District Court of Appeal of Florida, First District.
March 30, 1972.
William H. Maness, Jacksonville, for appellant.
Raymond Ehrlich, and Herbert R. Kanning, of Mathews, Osborne & Ehrlich, Jacksonville, for appellee.
RAWLS, Judge.
Plaintiff (appellant) Ragland sued defendant (appellee) Clarson, a surveyor, for damages resulting from the cutting of plants and trees in the course of his employment in surveying Ragland's land. Upon trial of the issues a jury verdict was returned for the defendant-surveyor, final judgment was entered in favor of defendant, and motion for new trial was denied; hence, this appeal.
The two salient points on appeal posed by appellant concern the measurement of damages, and denial of his motion for directed verdict as to liability.
*758 The resolution of this controversy depends upon a construction of Section 472.14, Florida Statutes, F.S.A. viz.:
"472.14 Registered engineers and surveyors authorized to enter lands of third parties under certain conditions.  Registered engineers and registered land surveyors be and they are hereby granted permission and authority to go on, over and upon the lands of others when necessary so to do to make land surveys, and in so doing to carry with them their agents, servants and employees necessary for that purpose, and that such entry under the right hereby granted shall not constitute trespass, and that such registered engineers and registered land surveyors shall not nor shall their agents, servants or employees so entering under the right hereby granted be liable to arrest or a civil action by reason of such entry; provided, however, that nothing in this section shall be construed as giving the said registered engineers, registered land surveyors, their agents, servants or employees any right to destroy, injure, damage or move anything on said lands of another without the written permission of the landowner."
We find no reported case construing this statute.
This record discloses that Ragland has been "snake bit" in his strenuous efforts, spanning more than 20 years, to preserve a 52-acre parcel of land known as "Grandma's Farm" in its natural state and improve the land with plantings. Ragland's interest in this parcel of land is reflected by a record he kept of various shrubs and trees which were planted by him from 1965 through June 1969. His diary in a number of instances reflects the source of the seeds and cuttings. Among the plants that he placed on the land are: dogwood, various types of azaleas, maidenhair fern, unknown wild flowers, atamasco lilies, columbine, phlox, wygelia, nandina, brown-eyed susans, rhododendron, mountain laurel, white fringed orchid, magnolia, cherry laurel, redbud, myrtle, cedar, crab apple, peaches, plums, persimmons, cherokee roses, red bay, silver bell, and innumerable other varieties. In addition, from 1954 to 1969 Ragland planted 19,500 slash pines, 2,500 longleaf pines, 750 cedars, 1,000 spruce pines, and 500 Arizona cypress on the land. The foregoing plantings alone detail the intense interest that Ragland has in this parcel of land.
In 1966 the State Road Department located a segment of the interstate system through Ragland's property. He exhausted every effort available to halt that project.[1] The next blow to Grandma's Farm was the designation by the Duval County School Board of a portion of same for a senior high school site.[2] The instant controversy arose out of this action.
On January 15, 1969, the School Board, by letter to Clarson, advised: "You are authorized to proceed with the architectural survey on the subject site ... It is our desire that you furnish us with boundary information at your earliest convenience." On January 20, 1969, Ragland's attorney wrote to Clarson stating, inter alia:
"... I call your attention to the further proviso of that statute which reads as follows, to-wit:
`* * * Nothing in this section shall be construed as giving said registered engineers, registered land surveyors, their agents, servants or employees any right to destroy, injure, damage or move anything on said lands of another without the written permission of the landowner.'

*759 "As you know, access to the land was gained by removing a post and a valuable tree was cut down. This is to again repeat the warning previously given you and caution you that Dr. Ragland will insist that you respect the above quoted law, as well as the law that gives you the right to enter upon Dr. Ragland's land."
Subsequently, Clarson and his crew proceeded upon Ragland's land and performed the architectural survey, which included a topographical of the 19.68-acre proposed school site utilizing 300 feet contour lines. Ragland complained to Clarson's survey crew about their cutting trees and asked them not to cut any plants, but the crew continued surveying. Excerpts of Clarson's testimony as to cutting of growth on the land read as follows:
"To take an accurate survey, namely, on the base line we cut everything. If I remember, on the base line, there were less than twenty-four inches that we cut. We know that they needed that for accuracy of their work, and also for saving time and because they were going to clear out a bigger area anyway to build the school and so forth, so normally we cut everything, sir."
"... I told them to be real careful and not to cut anything of any value and not to cut anything large or anything but what they absolutely had to be able to accomplish the work."
The subject statute is clear and unequivocal. It grants a license to a surveyor or his agents to enter upon a landowner's property without his permission and without fear of criminal prosecution for trespass. It does not permit him to "break and enter," that is, to remove barricades for the convenience of driving vehicles on the landowner's property; it does not permit him to "destroy, injure, damage, or move anything without the written permission of the landowner". But, the surveyor says: I have to cut in order to run a line. The simple answer is if he has to cut, he must procure the written permission of the landowner, or in the alternative be prepared to respond in damages. To construe the statute otherwise might well activate the constitutional guarantee that a citizen shall not be deprived of his property without due process of law. The facts are not in dispute that this surveyor destroyed, injured and damaged this property without the written permission of the landowner. The trial judge should have directed a verdict for plaintiff on the question of liability.
We next consider the question of damages. Ragland strenuously contends that he was entitled to introduce evidence as to "replacement" value of each plant, tree or shrub damaged. We do not agree. Ragland's damages were clearly sought for deprivation of his convenience, comfort and enjoyment of the subject parcel. This is illustrated by Ragland's own testimony: "I have been trying to preserve it as open space which I feel is vitally needed in a community like this." The trial judge instructed the jury as follows:
"The Court instructs you that the owner of property has the right to enjoy it according to the owner's [taste] ... and wishes so that the taking or injuring or damaging trees or shrubs may deprive the owner of convenience and comfort in the use of his land for which he is entitled to be compensated though the damages or destruction of trees and shrubs might not generally diminish the market value of the property."
The above portion of the instruction is a correct enunciation upon the law as to this plaintiff's damages. It is the next part of his instruction that constitutes reversible error. There, the trial judge advised the jury that if it found from "the greater weight of the evidence that the trees and shrubs alleged to have been damaged ... under such circumstances as to entitle the plaintiff to recover ... you may consider whether or not the plaintiff was deprived of the convenience and comfort in the use and enjoyment of his property ..." The evidence was not in dispute that defendant-surveyor deprived *760 plaintiff of his convenience and comfort in the use and enjoyment of his property. This segment of the instruction was erroneous.
In view of the evidence in this record we hold that the question of punitive damages was properly submitted to the jury and upon a new trial being granted the jury should again be instructed on the question of punitive damages.
The judgment appealed is reversed with directions to grant a new trial on all issues since the question of damages is intricately interwoven with the question of liability.
Reversed and remanded.
SPECTOR, C.J., and CARROLL, DONALD K., J., concur.
NOTES
[1] Ragland v. State Department of Transportation, 242 So.2d 475 (1 Fla.App. 1971). The facts in this case further detail Ragland's care, concern and attachment for this property.
[2] The School Board had not instituted eminent domain proceedings. The "designation" of the subject parcel by the School Board as a potential school site did not confer upon it any property rights in the parcel.