THE RECTOR, WARDENS AND VESTRY OF
ST. CHRISTOPHER'S EPISCOPAL CHURCH v.
C. S. McCROSSAN, INC.

235 N. W. 2d 609.

November 7, 1975—No. 44863.

---

144

*John G. Bell,* for appellants.

*Mahoney, Dougherty & Mahoney* and *Kenneth Gleason,* for respondent.

Heard before Otis, Todd, and MacLaughlin, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

Plaintiffs have brought this action to recover damages against a road contractor for negligently suffocating the roots of shade trees located on plaintiffs' church property. The trial court directed a verdict for defendant on the grounds plaintiffs failed to prove damages based on the diminution in value of the real estate and sought only to recover the cost of replacement. We reverse.

This is a companion case to Baillon v. Carl Bolander & Sons Co. 306 Minn. 155, 235 N. W. 2d 613 (1975), in which we declined to depart from the traditional measure of damages in an action for the destruction of trees and shrubbery. There, we pointed out the trees were not desirable as shade trees or ornamental trees but served the primary function of preventing erosion on a hillside next to a freeway and, to some extent, acted as a sound barrier. Because the trees were, for the most part, ill-formed, unattractive, and of little intrinsic value, we held that the proper measure of damages was the diminution in value of the real estate rather than the replacement cost of the trees. The evidence in the instant case, however, compels a different conclusion. Here, the trees had substantial value for shade and ornamental purposes and acted as a sound barrier and a screen from highway traffic. Accordingly, it was proper for plaintiffs to rely

on replacement cost in submitting the damage issue to the jury. However, because the court directed a verdict for defendant, the liability issue has not been litigated.

The facts as they bear on the issue of damages are not complicated. The church is located in Roseville at the intersection of Highway No. 36 and Hamline Avenue. In 1969, .83 acres were taken by the Highway Department to enlarge the intersection, which deprived the church of its existing access and part of its parking area. Defendant was retained by plaintiffs to construct a new parking space and access road. At the north end of plaintiffs' property was located a grove of trees which is the subject of this lawsuit. In the process of grading, defendant dumped fill around the base of the trees which plaintiffs allege caused the trees to suffocate and ultimately resulted in their destruction in the fall of 1972.

There was testimony that the trees in question consisted of two black cherry trees and twenty red oaks. They were of natural growth. The oaks were large and mature. Plaintiffs' expert testified that because of the variety, size, and condition of the trees they had a total value of $17,267. In seeking recovery, plaintiffs assert that the grove of trees not only acted to screen the area from heavy traffic on two sides, but gave the area a natural, pleasing, aesthetic, wooded atmosphere. Under these circumstances, we are of the opinion and hold that replacement cost was a proper element of damages to be considered by the jury, notwithstanding plaintiffs' inability to prove that the destruction of the trees diminished the value of the property as a whole.

This is a case of first impression in this state. In directing a verdict for defendant, the trial court understandably relied on Reynolds v. G. N. Ry. Co. 119 Minn. 251, 138 N. W. 30 (1912), which we cited with approval in the Baillon case. The Reynolds case, however, dealt with the measure of damages to standing timber, and we held that it was not the diminution in value of the timber but diminution in value of the land which was the proper measure of damages. That case was decided some 63 years

ago and was not concerned with the value of timber for any purpose other than its commercial value. Since that time, courts throughout the country have placed a greater emphasis on the rights of a property owner to enjoy the aesthetic value of trees and shrubbery, notwithstanding the fact they may have little commercial value or that their destruction may, indeed, even enhance the market value of the property. It occurs to us, for example, that hypothetically the highest and best use of plaintiffs' property may be for a shopping center or other commercial purposes and that the destruction of the trees, therefore, might have little impact on the value of the land itself. Nevertheless, we are persuaded that it is the better rule that where trees and shrubbery have aesthetic value to the owner as ornamental and shade trees or for purposes of screening sound and providing privacy, replacement cost may be considered to the extent that the cost is reasonable and practical. Of course, the defendant may always show by way of rebuttal that the effect on the value of the land as a whole is minimal, and it is for the jury to balance these elements of damages in arriving at a just and reasonable award. There are situations where it is conceivable that from a practical point of view, because of the size of the trees, they cannot be replaced without costs which are wholly disproportionate to the damage inflicted. Under such circumstances, it cannot be expected that restoration or replacement will exactly duplicate what was damaged or destroyed.

We find support for our decision in a substantial body of law which has emerged over the last 20 years. As early as 1902, however, in a trespass case, Gilman v. Brown, 115 Wis. 1, 91 N. W. 227, the Wisconsin Supreme Court declined to hold that diminution in value of the land was the sole measure of damages for destruction of shade and fruit trees. The court said (115 Wis. 7, 91 N. W. 229):

"* * * An owner of real estate has a right to enjoy it according to his own taste and wishes, and the arrangement of buildings, shade trees, fruit trees, and the like may be very im-

portant to him, may be the result of large expense, and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated, and yet the arrangement so selected by him might be no considerable enhancement of the sale value of the premises, it might not meet the taste of others, and the disturbance of that arrangement, therefore, might not impair the general market value. Hence it is apparent that while the owner may be deprived of something valuable to him, for which he would be willing to pay substantial sums of money or which might have cost him substantial sums, yet he might be wholly unable to prove any considerable damages merely in the form of depreciation of the market value of the land. The owner of property has a right to hold it for his own use as well as to hold it for sale, and if he has elected the former he should be compensated for an injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale."

Restatement, Torts, § 929, provides in part:

"Where a person is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction in value, the damages include compensation for

"(a)   at the plaintiff's election

" i.   the difference between the value of the land before the harm and the value after the harm or the cost of restoration which has been or may be reasonably incurred * * *."[1]

---

[1] Restatement, Torts 2d, Tentative Draft No. 19, § 929, is in part worded as follows:

"(1)   If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, his damages include compensation for

"(a)   The difference between the value of the land before the harm and the value after the harm, or, at his election in an appropriate case, the cost of restoration which has been or may be reasonably incurred * * * ."

See, also, Annotation, 69 A. L. R. 2d 1335, 1370.

A brief discussion of recent cases is appropriate. In applying the Restatement rule, the Maryland court in Samson Const. Co. v. Brusowankin, 218 Md. 458, 462, 147 A. 2d 430, 433, 69 A. L. R. 2d 1326, 1329 (1958), was dealing with the negligent destruction of "ornamental and shade trees of beauty, quality and size" having particular value to the owners. The trial court in that case charged the jury as follows (218 Md. 463, 147 A. 2d 433, 69 A. L. R. 2d 1330) :

"* * * [I]f the jury found the owners had reasons personal to them for restoring the lots as nearly as reasonably possible to their original condition, the jury could allow the reasonable cost of so doing, even though greater than the value of the lots."

The Maryland Court of Appeals refused to adopt the view that diminution in market value was the only applicable measure of damages.

Huber v. Serpico, 71 N. J. Super. 329, 176 A. 2d 805 (1962), dealt with a trespass where defendant cut some 50 trees ranging in age from 70 to 85 years used by plaintiffs and their family for their enjoyment and recreation. Because of evidence that the trees were used for shade and ornamental purposes, the Superior Court of New Jersey held that the jury could infer the wooded area on plaintiffs' land had "a peculiar aesthetic and ornamental quality" which should preclude limiting damages for the destruction of the trees to their mere value as commercial timber. 71 N. J. Super. 343, 176 A. 2d 812. The court adopted the following rule (71 N. J. Super. 345, 176 A. 2d 813) :

"Sound principle and persuasive authority support the allowance to an aggrieved landowner of the fair cost of restoring his land to a reasonable approximation of its former condition, without necessary limitation to the diminution in the market value of the land, where a trespasser has destroyed shade or ornamental trees or shrubbery having peculiar value to the owner."

Schankin v. Buskirk, 354 Mich. 490, 93 N. W. 2d 293 (1958), was a trespass case where the Michigan court allowed, among

other things, the cost of transporting replacement trees, and held (354 Mich. 496, 93 N. W. 2d 296):

"* * * We are not, with respect to ornamental or shade trees, restricted solely to a value-before and value-after test for injury to the freehold. These are proper elements for the jury's consideration but it may consider, as well, the value of the trees themselves to the contemplated or existing uses of the land, including the cost of replacement or restoration, in those cases where, as here, the property destroyed has a unique value of its own."

The Federal court in Maloof v. United States, 242 F. Supp. 175 (D. Md. 1965), allowed, among other things, as elements of damages for trees negligently destroyed by fire, the cost of removing debris, the cost of treating damaged trees, the cost of replacing plants and shrubs, and the cost of substantially restoring a number of fairly large trees, declining, however, to grant in addition separate damages for loss of aesthetic value.

A divided Utah court in Brereton v. Dixon, 20 Utah 2d 64, 433 P. 2d 3 (1967), gave the owner an option of applying whichever measure of damages would best serve his objective of receiving reasonable and adequate compensation for his actual loss related to his use of his property occasioned by defendant's negligence.

"* * * If he wants to maintain a fruit orchard, a wood lot, or even a primitive area, though his property may be more valuable if turned to an industrial or residential purpose, that should be his prerogative; and if it is wrongfully destroyed or damaged, the wrongdoer should pay for the actual damage he caused." 20 Utah 2d 67, 433 P. 2d 6.

In Thatcher v. Lane Const. Co. 21 Ohio App. 2d 41, 49, 254 N. E. 2d 703, 708 (1970), the Ohio court held:

"Where the presence of trees is essential to the planned use of property for a homesite in accordance with the taste and wishes of its owner, where not unreasonable, and where such trees are

destroyed by trespassers, the owner may be awarded as damages the fair cost of restoring his land to a reasonable approximation of its former condition, if such restoration be practical, without necessary limitation to diminution in market value of such land."

The rule approved by a Florida appellate court in Ragland v. Clarson, 259 So. 2d 757 (Fla. App. 1972), a trespass case, was as follows (259 So. 2d 759):

"The Court instructs you that the owner of property has the right to enjoy it according to the owner's [taste] * * * and wishes so that the taking or injuring or damaging trees or shrubs may deprive the owner of convenience and comfort in the use of his land for which he is entitled to be compensated though the damages or destruction of trees and shrubs might not generally diminish the market value of the property."

Finally, in Morris v. Ciborowski, 113 N. H. 563, 311 A. 2d 296 (1973), a trespass case, the New Hampshire court, citing the Restatement as authority, held that where there was substantial evidence of the owner's personal residential and recreational use of land, replacement cost was a proper measure of damages.

We are in accord with the authorities cited and remand for a trial on the issues of liability and damages. As we have previously indicated, the jury may properly consider both the cost of restoration and the before- and after-value of the land itself. In instances where the cost of replacement is unreasonable or excessive in relation to the damage to the land itself, the court will, in its discretion, allow the jury to consider more than one measure of damages in order to permit flexibility and achieve a just and reasonable result.

Reversed and remanded for a new trial.