Kenneth MUEHLSTEDT, Respondent,

v.

CITY OF LINO LAKES, et al., Appellants (C2-90-2317), (C6-90-2725), Respondents (C4-90-2321), (C7-90-2717),

Dell Contracting, Inc., et al., Respondents (C2-90-2317), (C6-90-2725), Appellants (C4-90-2321), (C7-90-2717).

Nos. C2-90-2317, C4-90-2321, C7-90-2717 and C6-90-2725.

Court of Appeals of Minnesota.

July 23, 1991.

Review Denied Sept. 25, 1991.

Mark Arth, Arth Law Office, St. Paul, Douglas Peine, St. Paul, for respondent.

Frank J. Rajkowski, Donohue, Rajkowski, Hansmeier, Grunke & Jovanovich, St. Cloud, for City of Lino Lakes, Toltz, King, Duvall, Anderson & Associates, Inc., and John Davidson.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

Scott Ballou, Stich, Angell, Kreidler & Muth, P.A., Minneapolis, for Dell Contracting, Inc., and John Vickaryous.

Considered and decided by CRIPPEN, P.J., and FOLEY and MULALLY,* JJ.

## OPINION

CRIPPEN, Judge.

During road construction, trees on the property of respondent Kenneth Muehlstedt, as well as those from the right of way, were cut and then buried on Muehlstedt's property. When the buried trees later interfered with respondent's attempts to build a house, he sued those involved with the road construction. A special jury verdict awarded respondent compensatory and punitive damages against various defendants. Following a new trial on damages, another jury awarded respondent less compensatory damages but more punitive damages. The trial court granted defendants a third trial if respondent did not accept a punitive damages remittitur, and this reduction was accepted. Defendants appeal, principally on the award of punitive damages, and respondent challenges the remittitur and the trial court's attorney fees determinations. We reverse and modify in part.

## FACTS

In 1979 respondent paid $15,000 for three parcels of land, including Lots 11 and 12 in Lino Lakes, Minnesota. In 1984 respondent petitioned the city for road access to his properties. This request was granted and the city engineer, appellant John Davidson, who was also employed by appellant Tolz, King, Duvall, Anderson & Associates, Inc. (TKDA), drafted the necessary documents for construction of the road. The plans required that trees removed from the right of way be disposed of "off site" and that all other work be done on the right of way unless permission was obtained for workers to enter the abutting private property.

pursuant to Minn. Const. art. VI, § 2.

The prime road construction contractor, appellant Northern Asphalt, Inc., subcontracted tree removal to appellant Dell Contracting. Prior to starting work, Davidson and Dell's representative, appellant John Vickaryous, discussed tree removal. A subsequent telephone conversation between Vickaryous and Davidson occurred during tree removal. Vickaryous used a bulldozer to knock down trees on Lot 11 and to dig a hole in which the trees from respondent's property and the right of way were buried.

Upon learning that trees were being buried on his land, respondent, who was planning to build a house on Lot 12, called Davidson. As a result, respondent, Davidson and Vickaryous all met on the site to discuss what had happened. During this conversation Davidson allegedly offered to remove the trees.

The next spring respondent built his house. In order to install his septic system, respondent had to have his contractor remove 38 truckloads of trees and refill the hole at a cost of $17,165. Respondent then sued the city, Davidson, TKDA, Northern, Dell, and Vickaryous.

At trial, conflicting testimony was entered regarding the contents of the Vickaryous–Davidson telephone call. Also, testimony conflicted as to whether respondent consented to the burial of the trees during the on-site conversation. Testimony further conflicted regarding the number and type of respondent's trees bulldozed by Vickaryous. The jury returned a special verdict awarding respondent $25,818 for the destroyed trees and $17,165 in compensatory damages for the burial of trees. The jury also assessed punitive damages against Vickaryous, Dell, Davidson, and TKDA. After statutory trebling of the compensatory damages for the destroyed trees, the award totaled $180,619.

Appellants moved for JNOV, noting respondent had offered no evidence of appellants' abilities to pay punitive damages. The trial court denied the JNOV motion but found all damages excessive except the award for tree burial. The trial court then offered respondent the choice between a new trial or reduced awards on the damages deemed excessive.

Respondent opted for a new trial and in those proceedings he presented evidence of the appellants' abilities to pay punitive damages. The trial court told the second jury that it was not to consider whether punitive damages were appropriate, and submitted the damages questions to the jury. The second jury awarded respondent $15,785 as compensatory damages for the bulldozed trees and assessed punitive damages greater than those assessed by the first jury against the same defendants, including a $500,000 assessment against TKDA. After statutory trebling of the tree loss award, damages in the second trial totaled $617,355.[1]

Finding the punitive damages assessment against TKDA excessive, the trial court again granted respondent a choice between a new trial and an award of $100,000 in punitive damages against TKDA. Respondent accepted the reduced award.

## ISSUES

1. Are treble damages for injury to trees and punitive damages mutually exclusive? Did the trial court otherwise err in its approach to punitive damages?

2. Is the evidence sufficient to support special verdict findings? Did the trial

1.

| AWARD | FIRST TRIAL | FIRST REMITTITUR | SECOND TRIAL | SECOND REMITTITUR |
|---|---|---|---|---|
| Damage to trees | $25,818 | $5,000 | $ 15,875 | |
| Vickaryous punitive | $ 8,600 | $5,000 | $ 15,000 | |
| Dell punitive | $17,200 | $5,000 | $ 20,000 | |
| Davidson punitive | $20,800 | $5,000 | $ 35,000 | |
| TKDA punitive | $39,400 | $5,000 | $500,000 | $100,000 |

court abuse its discretion by allowing certain evidence of compensatory damages, or in its rulings on attorney fees.

## ANALYSIS

### 1. Punitive Damages

The primary elements of the appeal are respondent's challenge on the use of the final remittitur and TKDA's allegation that the remaining $100,000 punitive damage award is still excessive. To reach a conclusion on these contentions, we also must address specific challenges to the entire punitive damage award.

#### a. *Treble and Punitive Damages*

■■■ By statute, compensatory damages for trees cut from the land of another are trebled. Minn.Stat. § 561.04 (1988). In *Johnson v. Jensen*, 446 N.W.2d 664 (Minn. 1989), the supreme court held inappropriate the recovery of both treble damages and punitive damages for trespass largely in the form of damage to trees and shrubs. *Id.* at 666.

Here, the special verdict form allowed punitive damages to be assessed only for the burial of trees on respondent's property, not for the damages to respondent's trees. The jury instructions similarly required the jury to distinguish the trespass to respondent's trees from trespass to respondent's real estate. We conclude that the trial court's instructions and the special verdict form are lawful.[2]

#### b. *Vicarious Liability*

■■■ By statute, punitive damages can properly be awarded against an employer if the employee worked in a managerial capacity and acted in the scope of employment. *See* Minn.Stat. § 549.20, subd. 2(c) (1990). Here, Davidson was a TKDA manager. TKDA, however, argues that under *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen*, 454 N.W.2d 916 (Minn.1990),

the trial court erred in allowing assessment of punitive damages. We disagree.

*Shetka* involved an unsuccessful attempt to use the financial status of an alleged tortfeasor's partners to determine a punitive damages award. *Shetka*, 454 N.W.2d at 919. Thus, *Shetka* addressed the measuring of punitive damages under Minn. Stat. § 549.20, subd. 3, rather than the question whether punitive damages may be assessed against corporate defendants for the wrongs of their managers. *See id.* Further, the *Shetka* analysis is based on the Uniform Partnership Act, which is not at issue in the instant case. *See id.*

Appellant also relies on language in *Shetka* questioning whether the plaintiffs there could show willfulness of the partnership or nonconsulting partners. *Shetka*, 454 N.W.2d at 918 n. 1. This language bears expressly on claims other than those of vicarious liability for conduct of a partner, the liability at issue here. *See id.*

Finally, appellants argue that a nonculpable employer's liability is limited to that of the defending employee. This contention is inconsistent with language of the punitive damage statute explicitly allowing punitive damages to be "awarded against" a principal if the offender was employed in a managerial capacity. *See* Minn.Stat. § 549.20, subd. 2(c); *see also Pacific Mut. Life Ins. Co. v. Haslip*, ── U.S. ──, ──, 111 S.Ct. 1032, 1041, 113 L.Ed.2d 1 (1991) ("If an insurer were liable for [punitive] damages only upon proof that it was at fault independently, it would have an incentive to minimize oversight of its agents").

#### c. *Retrial on Amount of Punitive Damages*

■■ Because the issue of punitive damages is often interconnected with the issues of liability and compensatory damages, it will usually be appropriate for a trial court, as an alternative to a partial new trial, to

---

**2.** Under Minn.Stat. § 549.09, subd. 1(b)(4) (1990), preverdict interest is not allowed for "punitive damages, fines or other damages that are noncompensatory in nature." Thus, because Minn.Stat. § 561.04 allows recovery of "treble the amount of damages which may be

assessed [for the destroyed trees]" only the first third of the trebled damages is compensatory. The remainder is at least "noncompensatory" and the trial court's allowance of prejudgment interest on this amount must be reversed.

reduce an excessive punitive damage award to a reasonable sum. *See Hodder v. Good-year Tire & Rubber Co.,* 426 N.W.2d 826, 837 (Minn.1988), *cert denied,* 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). *Hodder,* however, does not universally forbid new trials on punitive damages.[3]

Where the amount of punitive damages is separately retried, the second jury will necessarily be made aware of the first jury's liability determination. The trial court found that because the requisites of "substantial justice" were satisfied by the second trial, any error resulting from the retrial of the punitive damage issue alone was harmless under Rule 61. This judgment should stand. The mischief *Hodder* sought to avoid by discouraging partial new trials was the needless relitigation of fault to determine the egregiousness of that fault. *Id.* Ordering a third trial based on an alleged violation of *Hodder* would only exaggerate the problems sought to be avoided.

### d. *Punitive Damages in Cases Not Involving Personal Injury*

▆▆▆▆ Appellants argue that punitive damages are inappropriate in this case because there was no personal injury. *Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226, 229 (Minn.1982), addressed the nature of punitive damages:

> [T]he "punitive damages remedy concerns the vital state interest of protecting persons against personal injury." The interests implicated in strict liability actions for injury solely to property are not so great as to warrant extension of this controversial remedy to those actions.
>
> * * * * * *
>
> Where [a plaintiff's] injury is limited to property damage, the public interest in punishment and deterrence is largely satisfied by the plaintiff's recovery of com-

pensatory damages. Punitive damages represent an extraordinary measure of deterrence. Denying their imposition in this case [which did not involve personal injury], after allowing punitive damages in strict liability actions for personal injury, reflects the higher value our society places on the safety of persons than it does on the security of property.

(Citations omitted.)

Initially, we note that *Eisert's* prohibition of punitive damages for property damage is for products liability claims. Similarly, Minnesota's punitive damage statute arose from concern over developments in products liability litigation. *See Minnesota-Iowa Television Co. v. Watonwan T.V. Improvement Ass'n,* 294 N.W.2d 297, 310–11 (Minn.1980).

Additionally, we observe that the 1978 punitive damage statute codified existing case law and applied only to previously recognized causes of action. *Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 891–92 (Minn.1986). Trespass, the offense for which punitive damages were assessed here, is not a new cause of action. We also note that prior to enactment of the 1978 statute, case law existed allowing punitive damages in cases not involving personal injury. *See, e.g., Hendrickson v. Grengs,* 237 Minn. 196, 205, 54 N.W.2d 105, 110 (1952) (wrongful taking of mortgaged property).

Since the statute's enactment, punitive damages have been affirmed by this court in cases not involving personal injury. *See, e.g., Hydra–Mac, Inc. v. Onan Corp.,* 430 N.W.2d 846, 856 (Minn.App.1988) (breach of warranty), *aff'd in part, rev'd in part on other grounds,* 450 N.W.2d 913 (Minn. 1990). Further, the federal district court has resolved this question in favor of allowing punitive damages in cases without personal injury. *See Williams Pipeline Co. v.*

---

**3.** In *Runia v. Marguth Agency, Inc.,* 437 N.W.2d 45, 50 (Minn.1989), the supreme court rejected arguments for unconditional remittiturs. Here, the second trial court, faced with what had been found to be excessive punitive damages, expressed confusion in attempting to apply both *Hodder* and *Runia.* We believe *Hodder* and

*Runia* may be read consistently because the relevant portion of *Hodder* addresses punitive damage awards, *see Hodder,* 426 N.W.2d at 835–37, while the relevant portion of *Runia* addresses compensatory damages. *See Runia,* 437 N.W.2d at 49–51.

*City of Mounds View,* 704 F.Supp. 914, 920–21 (D.Minn.1989).[4] Finally, the statute itself, stating that punitive damages "shall be allowed" in proper circumstances, Minn. Stat. § 549.20, subd. 1 (1988), contains no explicit restriction to cases involving personal injury. *See* Minn.Stat. § 645.44, subd. 16 (1988) ("shall" is mandatory); *see also* Minn.Stat. § 645.16 ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit").

In sum, we decline to expand *Eisert* beyond its subject matter of product liability litigation. Any further enlargement of *Eisert* should be determined by the legislature or the supreme court.

While we do not read *Eisert* as a general prohibition on punitive damages where there is no personal injury, *Eisert* and *Hodder* require broadened appellate review on the amount of punitive damage awards in such circumstances.

The factors to be considered in determining the amount of a punitive damage award are enumerated in Minn.Stat. § 549.20, subd. 3. Under *Hodder,* 426 N.W.2d at 837, the purpose of punitive damages is to punish and deter conduct found to be willfully indifferent to the rights of others. We will not disturb a punitive damages award "unless it appears that the award was actuated by passion and prejudice and is so excessive as to be deemed unreasonable." *Gryc v. Dayton–Hudson Corp.,* 297 N.W.2d 727, 741 (Minn.), *cert. denied,* 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980).

Here, the profitability of the burial and the public hazard appear minimal. However, the jury apparently believed evidence that Davidson was aware he had not consulted with respondent about the use of his property to bury trees. The jury also heard evidence it could find sufficient to show improper concealment of facts. The relative sizes of the assessments suggest that the jury properly considered the appellants' financial conditions.

The trial court concluded that the punitive damage award against TKDA was the product of passion or prejudice. We will not disturb this judgment. Regarding reduction, the trial court concluded that a $100,000 award on these facts was "more than adequate" to serve the purposes of punitive damages. Having in mind this assessment by the trial court as well as our elevated obligations of review where there is no personal injury, we affirm a punitive damage award of $70,000 against TKDA, double the sum awarded against Davidson.

### e. *Jury Instructions*

■■■■ Dell contends that the jury should have been told that the compensatory damages would be tripled. A specific jury instruction is not required unless the jury needs it to "intelligently determine" an issue. *Paulson v. Lapa, Inc.,* 450 N.W.2d 374, 379 (Minn.App.1990), *pet. for rev. denied* (Minn. Mar. 22, 1990). Knowledge of the trial court's statutory duty to treble the compensatory jury award is not needed to determine the value of the destroyed trees nor is it relevant to determination of punitive damages for burial of material.

### 2. Other Issues

Appellants raise additional issues on the sufficiency of evidence for jury findings and the breadth of evidence permitted on compensatory damages. Respondent contends the trial court erred in denying an award of attorney fees.

a. The jury's findings will be sustained if it is possible to do so on any reasonable theory, and we must consider the evidence

---

4. We also observe that allowing punitive damages in cases not involving personal injury is consistent with the Prosser text:

Typical of the torts for which [punitive] damages may be awarded are * * * malicious prosecution and intentional interferences with property such as trespass, private nuisance, and conversion. But it is not so much the particular tort committed as the defendant's motives and conduct in committing it which will be important as the basis of award. Statutes in most states have provided punitive damages for particular torts, as in the case of multiple damages for trespass.

Prosser & Keeton, *The Law of Torts* § 2 (5th ed. 1984) (footnotes omitted).

in the light most favorable to the prevailing party. *Ruskamp v. Ferknes*, 261 N.W.2d 612, 613 (Minn.1978).

 i. Davidson's liability. Under the contract, engineer Davidson was responsible for "any and all questions" regarding completion of the roadwork. More specifically, Vickaryous testified that Davidson told him to put the trees on respondent's property and that Davidson authorized him to knock down and bury the trees on respondent's property with a bulldozer. Contrary testimony presents a credibility question for the jury. Also, because the contract indicates that Lino Lakes hired TKDA as the engineers for the project and Davidson was the ranking TKDA representative involved with the project, the record supports the jury's conclusion that Davidson served as TKDA's manager.

 ii. Clear and convincing evidence of indifference. Willful indifference to support a punitive damages award is "a maliciousness, an intentional or willful failure to inform or act." *Wikert v. Northern Sand & Gravel, Inc.*, 402 N.W.2d 178, 183 (Minn.App.1987), *pet. for rev. denied* (Minn. May 18, 1987). "The weight and force to be given evidence relating to punitive damages is exclusively a jury question." *Wilson v. City of Eagan*, 297 N.W.2d 146, 150 (Minn.1980). Here, prior to the tree burial, Davidson knew that the proposed burial site was private property and that the contracts prohibited trespass or entry onto private property without permission. He also knew that he had not contacted respondent regarding use of the property for tree burial. On these facts, our deference to the jury does not allow us to conclude that it erred in finding a willful failure to act.[5]

 b. Analogizing to *Baillon v. Carl Bolander & Sons, Co.*, 306 Minn. 155, 235 N.W.2d 613 (1975), Dell argues that the jury's consideration of respondent's compensatory damages should have been limited to the diminution of the value of his real estate resulting from the loss of his trees.

*Baillon* and *Rector, Wardens and Vestry of St. Christopher's Episcopal Church v. C.S. McCrossan, Inc.*, 306 Minn. 143, 235 N.W.2d 609 (1975), are companion cases. In *Baillon*, because the destroyed trees were not particularly valuable, the court ruled that the proper measure of damages was the difference in the land value resulting from the damage to the trees. *Baillon*, 306 Minn. at 157, 235 N.W.2d at 614–15. In *McCrossan*, however, the trees were valuable. "Accordingly, it was proper for plaintiffs to rely on replacement cost in submitting the damage issue to the jury." *McCrossan*, 306 Minn. at 144–45, 235 N.W.2d at 610. *McCrossan* also observed that where the effect on the land value is alleged to be minimal "it is for the jury to balance these elements of damages in arriving at a just and reasonable award." *McCrossan*, 306 Minn. at 146, 235 N.W.2d at 611.

Here, given the inconsistent evidence regarding the nature of the destroyed trees, we conclude that the trial court did not err under *McCrossan* in allowing evidence regarding both the diminution in the property's value and the replacement value of the destroyed trees. Further, given the conflicting evidence, we also defer to the jury's compensatory damage determination.[6]

 c. The trial court denied respondent's motion for bad faith attorney fees

---

**5.** Because the jury's fault findings demonstrate that Vickaryous was directed to bury the trees by Davidson, we conclude that he lacked the willful indifference necessary to sustain a punitive damage award against him. Therefore, the assessment of punitive damages against Vickaryous and Dell is reversed and we need not address whether Vickaryous acted in a managerial capacity for Dell.

**6.** The argument that the trial court erred in entering judgment against Northern for compensatory damages is without merit. The contract states: "[Northern] * * * shall assume full responsibility for supervision of the work irrespective of the amount of work sublet * * *." Further, a subcontractor is an entity "execut[ing] part of the work under the terms of the contract * * *." "Work" is providing that which is necessary "to the successful completion of the project including all of the duties and obligations imposed by the contract upon the contractor." Thus, a subcontractor is performing a portion of the contractor's work under the contract. Under the terms of the contract, the contractor "shall be responsible for any damage

under Minn.Stat. § 549.21, stating "[Appellants'] lawyers' efforts * * * did not cross the line between zealous advocacy and bad faith." Bad faith is an issue of fact which the trial court is in the best position to judge. *Uselman v. Uselman,* 464 N.W.2d 130, 140 (Minn.1990). Respondent does not explain why the trial court's conclusion that there was no bad faith in this case is "clearly erroneous." *See* Minn.R.Civ.P. 52.01 (trial court findings of fact may be set aside only if clearly erroneous). The trial court did not abuse its discretion in refusing to award attorney fees under section 549.21. Finally, we conclude that the trial court's award of attorney fees under Minn.R.Civ.P. 37.01(d) in discovery proceedings was not an abuse of the trial court's discretion.

### DECISION

We reverse punitive damage awards against appellants Vickaryous and Bell, affirm the $35,000 punitive damage award against appellant Davidson, and affirm the punitive damage award against appellant TKDA modified to the amount of $70,000. We affirm other trial court decisions attacked on appeal.

Reversed in part, and affirmed in part as modified.

occasioned by or resulting from his * * * work * * * to property of any kind outside the construction area."