*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0422**

Steven Wrolstad, et al.,
Respondents,

vs.

Benjamin Napper,
Appellant

**Filed December 19, 2016
Affirmed in part, reversed in part, and remanded
Worke, Judge**

Koochiching County District Court
File No. 36-CV-13-306

Joseph M. Boyle, International Falls, Minnesota (for respondents/cross-appellants)

Andrew W. Barnhart, Steven A. Nelson, International Falls, Minnesota (for appellant/cross-respondent)

Considered and decided by Cleary, Chief Judge; Peterson, Judge; and Worke, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges the district court's order awarding respondents restoration damages for the loss of trees caused by appellant's trespass, arguing that the district court used an incorrect measure of damages and clearly erred in its factual findings. Respondents filed a notice of related appeal (NORA) challenging the district court's denial of treble damages under Minn. Stat. § 561.04 (2014). We affirm the district court's award of

restoration damages and its factual findings.  We reverse and remand for the district court to award treble damages.

## FACTS

Respondents Steven and Donna Wrolstad own lot B, a parcel of land on Rainy Lake.  Lot C, the parcel to the east of lot B, is owned by appellant Benjamin Napper.

When the Wrolstads purchased lot B, lot C was owned by Napper's father.  Napper's father dredged, excavated, and filled along the northeastern shoreline of lot B.  He also cleared some trees in the northeastern portion of lot B.

Napper acquired lot C in 2007.  Napper continued to mow, clear brush, and cut trees in this northeastern section of lot B.  The Wrolstads had several conversations with Napper and asked him not to mow or otherwise trespass on their property.  Napper never claimed that the property was his and would generally acquiesce to the Wrolstads' requests.

When Napper acquired lot C, lot B had a forested area on its eastern edge extending 20 feet east to west and 125 feet north to south.  This area created a privacy barrier between lots B and C.  The Wrolstads' home is just to the west of this area.

In August 2012, the Wrolstads took a trip to Norway.  When they returned, they discovered that Napper had cleared the forested area and installed a concrete foundation wall, loose gravel, and a construction shed.  In doing so, Napper had changed the topography by removing rock and other material.  The trees and bushes that had provided the privacy barrier were gone.

The Wrolstads sued Napper for trespass.  They sought treble damages for the loss of "trees and shrubs" that provided "beauty, shade, and privacy."  At trial, Napper admitted

2

installing the wall and shed, but denied removing trees. The district court found Napper liable for trespass and awarded the Wrolstads $55,047.75 in damages. The amount included $46,107 for a landscaping plan that called for planting and maintaining new trees and plants, $5,043 to restore the topography of the site, and $3,897.75 for a survey the Wrolstads commissioned to determine the exact border between the properties. The district court denied the Wrolstads' request for treble damages.

Napper moved for a new trial, arguing that there was insufficient evidence that he intentionally and knowingly trespassed or destroyed trees or topography. He also argued that restoration costs were an inappropriate measure of damages.

The district court denied Napper's motion for a new trial, and he appealed to this court. The Wrolstads filed a NORA, challenging the district court's denial of their request for treble damages.

## D E C I S I O N

### *Measure of damages*

Napper first argues that the district court erred in measuring damages based on the cost of restoring the trees and plants destroyed by his trespass. He argues that the proper measure of damages is the diminution of value of the land.

Historically, cases involving the loss of trees were concerned with the commercial value of trees as timber. *Rector, Wardens & Vestry of St. Christopher's Episcopal Church v. C.S. McCrossan, Inc.*, 306 Minn. 143, 145-46, 235 N.W.2d 609, 610 (1975). More recently, however, courts have placed greater weight on "the rights of a property owner to enjoy the aesthetic value of trees and shrubbery, notwithstanding the fact they may have

3

little commercial value or that their destruction may, indeed, even enhance the market value of the property." *Id.* at 146, 235 N.W.2d at 610. For this reason, when trees and shrubs "have aesthetic value to the owner as ornamental and shade trees or for purposes of screening sound and providing privacy, replacement cost may be considered to the extent that the cost is reasonable and practical." *Id.* at 146, 235 N.W.2d at 611.

On the other hand, when destroyed trees are "for the most part, quite small, ill-formed, and not particularly desirable as shade trees or ornamental trees," restoration damages are not appropriate. *Baillon v. Carl Bolander & Sons Co.*, 306 Minn. 155, 157, 235 N.W.2d 613, 615 (1975). In *Baillon*, the supreme court concluded that restoration damages would replace unhealthy and ill-formed trees with healthy and well-formed trees. *Id.* Accordingly, restoration damages would "involve an expense greatly out of proportion to the actual damage to the real estate." *Id.*

The district court found that the forested area "served as a buffer between [l]ots B and C." The district court also found that the Wrolstads "particularly enjoyed the shade this buffer provided and the privacy it provided from the activities on [l]ot C." The court further found that after Napper's trespass, "the privacy barrier created by the forested area was gone, and what remained was a barren area irregular in contour resembling a gravel or rock quarry." Moreover, in its order denying Napper's motion for a new trial, the district court stated that the privacy barrier of trees destroyed by Napper, like the trees in *C.S. McCrossan,* "had substantial value for shade, ornamental purposes, and acted as a sound barrier and a screen." The district court also indicated that the barrier was composed of "thick, natural, and mature trees."

4

Napper challenges these findings of fact, arguing that the Wrolstads "failed to show that the alleged lost trees were particular, peculiar or unique or otherwise ornamental, or trees of beauty, quality and size, or capable of providing shade." We review the district court's findings of fact for clear error. *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013). "[W]e examine the record to see if there is reasonable evidence . . . to support the [district] court's findings" and "view the evidence in the light most favorable to the verdict." *Id.* (quotation omitted). We will not conclude that the district court's findings of fact are clearly erroneous unless we are "left with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted).

The evidence presented at trial supports the district court's findings that the lost trees were thick, mature, and provided an aesthetically pleasing privacy barrier. Donna Wrolstad testified that prior to August 2012, the area was "beautiful" and that there were a lot of trees that provided privacy. She testified that she and her husband valued their privacy and being "in the woods." After their trip to Norway, however, she testified that a lot of their trees were gone leaving them without privacy.

Steven Wrolstad similarly testified that the trees created a "beautiful" privacy barrier that was "quite enjoying [sic] to look at." He also introduced numerous photographs of the area prior to August 2012 and pointed out large and mature trees that he said Napper removed. He testified that the privacy barrier these trees provided is now gone. Indeed, post-August 2012 photographs show a cleared construction zone with mature and thick trees to the north and west, indicating that the cleared area once contained similar trees.

Although Napper testified that he did not remove any trees, the district court accepted the testimony of Steven and Donna Wrolstad. Other witnesses also testified that Napper removed trees from the Wrolstads' property. This court defers to the district court's credibility determinations and does not reweigh the evidence on appeal. *Id.* at 797, 807.

The trees at issue in this case are not the type of ill-formed, sickly trees that *Baillon* held did not warrant restoration damages. *See* 306 Minn. at 157, 235 N.W.2d at 615. Instead, like the trees in *C.S. McCrossan*, the trees Napper destroyed had aesthetic value to the Wrolstads as "ornamental and shade trees or for purposes of screening sound and providing privacy" and are subject to restoration damages. *See* 306 Minn. at 146, 235 N.W.2d at 611. The district court's factual finding that restoration damages are appropriate due to the nature of the trees destroyed is not clearly erroneous.

Next, Napper argues that the landscaping and topographical plan that the district court used to calculate damages would not restore the land as nearly as reasonably possible to its original condition because the plan attempts to improve the property. The district court rejected this claim, finding that "[r]eplacement costs are necessary to restore the topography in such a way that the pre-existing privacy barrier can be restored; this can only be done by then restoring the mature trees. This is not an effort to 'better the property' as [Napper] claims." As stated above, this court reviews the district court's factual findings for clear error. *Rasmussen*, 832 N.W.2d at 797.

### *Landscaping Plan*

Napper's most persuasive argument against the landscaping plan involves what he labels as the "southern one third of the disputed area." Napper argues that there were never

6

trees in this area and that planting trees, as called for by the landscaping plan, would better the property by creating a privacy wall that did not exist prior to August 2012.

The evidence at trial appears to support Napper's claim that this area was not forested prior to August 2012. Photographs from 2003 and 2007 show little to no tree growth in the area. Steven Wrolstad also testified that at least a portion of this area was bare. He explained that prior to August 2012, when he looked to the northeast out of his east facing dining room window, he saw nothing but trees. When he looked, however, to the southeast out of this same window, he saw "barren rock."

Although the landscaping plan accepted by the district court contemplates planting trees in an area that was previously not forested, the district court's findings are not clearly erroneous. David Serrano, the architect of the landscaping plan, testified that he reviewed pre-August 2012 photos of the area in order to determine the amount of trees that would need to be planted to restore the Wrolstads' privacy barrier. He was asked on cross-examination why the plan called for planting trees in an area where photographs indicated none existed prior to August 2012. He noted that the trees lost were very large. It is impractical and cost prohibitive to replace one large tree with another large tree. Accordingly, a series of many small trees need to be planted. For example, he stated that eight small trees would be required to replace a large oak tree with a two-foot diameter. This testimony indicates that it is necessary to plant some trees and plants in the previously un-forested area in order to plant a sufficient number of small trees to make up for the loss of the large trees.

Napper also challenges the existence of trees in the northern two-thirds of the area the landscaping plan calls for reforesting. But, as outlined above, the Wrolstads and others testified to the lost trees in this area and the district court credited that testimony. That testimony was also supported by photographic evidence. This court defers to the district court's credibility determinations and does not reweigh evidence. *Id.* at 797, 807. Moreover, much of Napper's argument that he did not remove trees to do his construction work is based on aerial photographs. The district court found that these photographs were "of marginal value in determining the topography and foliage" because the accuracy of the photos was not clear as a result of questions surrounding "shadows, the time of year and day and the actual years the photos were taken." This finding was supported by testimony and is not clearly erroneous.

Replacement costs must be "reasonable and practical." *C.S. McCrossan*, 306 Minn. at 146, 235 N.W.2d at 611. In addition to finding that the landscaping plan was not an effort to better the property, the district court found that the costs of the landscaping plan were reasonable and practical given the trees destroyed. The district court's findings are not clearly erroneous.

### *Topographical Plan*

Napper also challenges the district court's finding that the topographical plan, which is meant to restore the pre-trespass character of the land and allow trees to be planted, is reasonable and practical. He argues that the plan is unworkable and would violate local ordinance.

Serrano conducted a topographical survey of the area to determine how best to restore the property. At the site, he discovered that Napper had removed a significant amount of earth from the area. As a result, the natural slope of the ground was made more dramatic. He created a plan to restore the natural slope and testified that it was reasonable and practical and would cost $5,046.

Napper claims on appeal, as he did at trial, that he did not remove any material from the disputed area. But the district court credited Serrano's testimony and found that Napper's work had changed the character of the land and made the slope more dramatic. Again, we view the evidence in the light most favorable to the district court's decision and defer to the district court's credibility determinations. *Rasmussen*, 832 N.W.2d at 807.

On the eastern edge of lot B, the topographical plan calls for a steep slope to bring the ground up to its natural grade. The slope will be held in place by rock. Napper argues that the planned slope is too steep to maintain without a retaining wall. But Serrano testified that this slope is workable using rock, which will be much cheaper than the series of retaining walls that would otherwise be required. Napper further argues that other portions of the plan create slopes that are too steep to allow trees to grow. We cannot find evidence in the record supporting his claim.

Napper next argues that because of the steep slopes contemplated by the topographical plan and the amount of rock and soil fill required, the plan would violate the local shoreland management ordinance. The plan calls for a total of 200 cubic yards of fill. The ordinance defines a "steep slope" as "lands having average slopes over 12 percent, as measured over horizontal distances of 50 feet or more." Koochiching County, Minn.,

9

Shoreland Management Ordinance (SMO) § 2.746 (1994).  It requires a permit to move "more than ten (10) cubic yards of material on steep slopes."  SMO § 5.32(C)(1) (1994).  It also requires a permit to move "more than 50 cubic yards of material outside of steep slopes."  SMO § 5.32(C)(2) (1994).  In addition, "[p]lans to place fill or excavated material on steep slopes must be reviewed by qualified professionals" and must "not create finished slopes of 30 percent or greater."  SMO § 5.32(D)(7) (1994).

Serrano testified that if a permit were required to approve the plan, he believed that one would be obtained.  He also testified that he is a "qualified professional" and that "there's a lot of room for interpretation of the slope there and it's [his] experience in working with the county that the plan . . . is reasonable and [he could foresee] absolutely no reason why the county would not approve [it]."  Serrano's testimony is supported by the fact that a "steep slope" is "measured over horizontal distances of 50 feet or more."  SMO § 2.746.  While portions of the topographical plan create slopes greater than 12 percent and even greater than 30 percent, the testimony indicates that they do so at distances of under 50 feet.  Accordingly, section 5.32(D)(7) may not apply.

The record shows that the district court carefully reviewed the exhibits and testimony before issuing its order.  The district court also personally visited the property.  The district court's findings of fact as to the landscaping and topographical plans are supported by Serrano's testimony and are not clearly erroneous.

*Treble damages*

Pursuant to their NORA, the Wrolstads argue that the district court erred by denying treble damages under Minn. Stat. § 561.04.  That statute provides:

10

> Whoever without lawful authority cuts down or carries off any wood, underwood, tree, or timber, or girdles or otherwise injures any tree, timber, or shrub, on the land of another person . . . is liable . . . for treble the amount of damages which may be assessed therefor, unless upon the trial it appears that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which the trespass was committed was the defendant's . . . .

Minn. Stat. § 561.04. The district court found that Napper's trespass "was not casual or involuntary" and "was not supported by a reasonable belief or probable cause that the [Wrolstads'] land upon which he trespassed was his own." Despite these findings, the district court denied treble damages because Napper's actions did "not arise entirely out of" the destruction of trees and because the "evidence does not differentiate" between the damage to trees and other damage to the land. The district court also noted that there had been no testimony as to the exact number of trees lost or the economic value of the trees.

The interpretation of a statute is a question of law that we review de novo. *State v. R.H.B.*, 821 N.W.2d 817, 820 (Minn. 2012). As stated above, we review the district court's factual findings for clear error. *Rasmussen*, 832 N.W.2d at 797.

The majority of the damages arose from injury to the Wrolstads' trees and shrubs that falls under the purview of Minn. Stat. § 561.04. The district court found that Napper destroyed the Wrolstads' forested privacy barrier and ordered $46,107 in damages to replace those trees and shrubs. In this situation, the plain language of the statute requires the district court to award treble damages "unless" the stated exceptions apply. Minn. Stat. § 561.04; *Baillon*, 306 Minn. at 158, 235 N.W.2d at 615.

11

The district court found that those exceptions did not apply. Napper argues that these findings are clearly erroneous because his and his father's use of the northeastern portion of lot B gave him probable cause to believe that he was on his own land. But the Wrolstads testified that they told Napper multiple times prior to August 2012 that he was trespassing. Steven Wrolstad testified that in May 2012 he showed Napper the property line. Another witness testified that in 2007 he showed Napper a monument marking the southwest corner of lot C. The witness told Napper that the property line ran due north from that point. The survey that the Wrolstads commissioned in the fall of 2012 matched the results of a prior survey and confirmed the location of the monument the witness showed Napper in 2007. The witness also testified that he had three or four other conversations with Napper about the property line. The district court's findings that Napper's trespass was not casual or involuntary and that he did not have probable cause to believe that he was on his own property are not clearly erroneous. Because the statute's exceptions do not apply, the district court was required to impose treble damages.

Napper argues, however, that restoration or replacement damages cannot be trebled under Minn. Stat. § 561.04. Likewise, the district court's order indicated that treble damages were inappropriate because there was no evidence of the economic value of the trees and shrubs lost. But, except in the limited case of trees "taken from uncultivated woodland for the repair of a public highway or bridge upon or adjoining the land," the statute does not require a specific measure of damages. Minn. Stat. § 561.04. The statute states only that the defendant is liable for "treble the amount of damages which may be assessed" for the loss of trees and shrubs. *Id.*

Although *C.S. McCrossan* does not mention Minn. Stat. § 561.04, it makes clear that replacement costs are an appropriate measure of compensatory damages for the loss of trees and shrubs. 306 Minn. at 146, 235 N.W.2d at 611. In *Muehlstedt v. City of Lino Lakes*, we stated that "[b]y statute, compensatory damages for trees cut from the land of another are trebled." 473 N.W.2d 892, 896 (Minn. App. 1991), *review denied* (Minn. Sept. 25, 1991). Applying *C.S. McCrossan*, we then approved the jury's consideration of the cost of replacing trees in determining the amount of compensatory damages and did not disturb the district court's decision to treble that amount. *Id.* at 899. There is nothing in the statute or in the cases cited by Napper to indicate that replacement damages cannot be trebled under Minn. Stat. § 561.04, and we have previously affirmed the decision to treble such damages.

The district court erred by failing to treble the $46,107 cost of replacing the Wrolstads' trees and shrubs. We direct the district court to treble this amount on remand.

**Affirmed in part, reversed in part, and remanded.**